Van Voorhis, J.
The State appeals from an affirmance of a judgment against it in the Court of Claims based on alleged negligence in failing to prevent plaintiff’s intestate from committing suicide while he was a patient at the Brooklyn State Hospital. He had a previous history of mental illness at other hospitals where he had made two suicidal attempts, one with phenobarbitol and the other by hanging. This time he succeeded in accomplishing his aim. He was pronounced dead on September 4, 1953 of barbiturate poisoning. Death was caused by swallowing about a dozen capsules of seconal at night.
Nobody knew where or how this drug was obtained by him nor where he had kept or accumulated the-se capsules in his room. It was not medicine that was ordinarily used at the Brooklyn State Hospital at this time. He had been assigned to a ward for suicidal patients. Eighty-five patients were in this ward. Decedent was given his meals in the ward where he was confined, which he left only for treatment or for interviews with a psychiatrist. On these occasions he was accompanied by an attendant or a nurse. When medication of any Mnd was required on this ward, the nurse would unlock and relock the *127 door upon departure, relocking it after her return with the drugs. These medications — not seconal—would be brought to the ward in such amounts as were used immediately, even though this meant repeating the procedure every four hours. Visits from family or friends were supervised, and gifts brought into the ward were checked by an attendant. Patients were allowed a monetary allowance of less than $1 at a time, enough to send for cigarettes or gum but insufficient to bribe anyone to get drugs. Decedent had not recently drawn upon this small allowance. When this patient was admitted to the State Hospital, he was completely examined, his clothes removed and he was furnished with State clothing. The regular practice was for the night shift attendants to put the patient to bed after examining Ms clothing and bed. He had been put to bed wearing only a pair of shorts so as to prevent his secreting anything potentially dangerous. The regular routine included removal of the mattress and inspection under the bed by the attendants.
How he obtained the barbiturates which resulted in his death is a mystery in the record. The burden of proof to establish causal negligence is upon the plaintiff (Morris v. Lake Shore & Michigan Southern Ry. Co., 148 N. Y. 182). The State could not have provided an employee to watch every move made by this unfortunate man during 24 hours of the day. We are not persuaded that it is evidence of negligence that he was not repeatedly wakened and his bed searched during the night. If institutions for the mentally ill are required to take all of the precautions contended for in this case, and are to be held liable for such delicate mistakes in judgment, patients would be kept in strait jackets or some other form of strict confinement which would hardly be conducive to recovery. No reason is asserted that decedent was not given suitable electric shock treatments, tranquilizers or other treatment designed to mitigate mental depression and self-destructive tendencies. Reasonable care is required to protect such patients against themselves (Martindale v. State of New York, 269 N. Y. 554; Gries v. Long Is. Home, 274 App. Div. 938) but no evidence of lack of it has been shown in this case. An ingenious patient harboring a steady purpose to take his own life cannot always be thwarted.
The judgment appealed from should be reversed and the claim dismissed, without costs.