ERIC HARROW, an Infant, by LEONARD HARROW, His Guardian ad Litem, et al., Appellants, *v.* STATE OF NEW YORK, Respondent. (Claim No. 35293.)

Third Department, July 29, 1964.

*Benjamin Frank* and *Ira Miles Pollack* for appellants.

*Louis J. Lefkowitz, Attorney-General (Jeremiah Jochnowitz* and *Paxton Blair* of counsel), for respondent.

REYNOLDS, J. The infant claimant, nearly 13 years of age, sustained personal injuries when on a clear dry day, at 3:30 in the afternoon, he rode his borrowed bicycle into a drainage culvert located at the southwest corner of the intersection of Sussex Road and Northern Boulevard in Nassau County, New York. He testified that he had cycled off the sidewalk onto the southerly side of Northern Boulevard to avoid a high curb and that on attempting to return to the sidewalk he passed between two white posts, two and one-half to three feet high and then travelled a short distance across a grassy area when he suddenly and unexpectedly dropped into the drainage culvert. Claimants contend that the State was negligent in the construction and maintenance of the culvert. After a trial the Court of Claims held "that the claimants have failed to establish the negligence of the defendant by a fair preponderance of the evidence and the claim is therefore dismissed." (32 Misc 2d

170, 173.) This holding which embodied factual determinations and the credibility of witnesses was peculiarly within the province of the Court of Claims as the trier of the facts. That court was exercising the function for which it was established, and its determinations should not receive cavalier treatment by the appeal courts and be lightly disregarded. We see no reason to disturb the considered judgment of that court in its appraisal of the credibility of the witnesses and its determination of the factual issues (see *Tyrell* v. *State of New York,* 6 A D 2d 958, 959).

Claimants would have us find that the State was negligent in not providing a barrier affording greater protection. On the instant facts this would cast too heavy a burden on the State (*McCauley* v. *State of New York,* 9 A D 2d 488, revd. 8 N Y 2d 938). In this strikingly similar case, as far as guardposts and barriers were concerned and with the warning posts almost in the same exact position (on the opposite side of the highway from the normal directional travel), HERLIHY, J., in one of the dissents which led the Court of Appeals to reverse this court and reinstate the determination of the Court of Claims stated: '' The finding of negligence here — as to guardposts — is unrealistic and attaches an intolerable burden of liability on the State.'' (9 A D 2d 488, 501.) These words are cogently applicable herein where the record clearly indicates the extreme improbability that any vehicle would enter the grassy area at the point in question. To do so as in *McCauley* (*supra*), a vehicle would have to be traveling on the left side of Northern Boulevard against traffic. And there was no emergency even claimed herein. The condition did not constitute a danger to anyone legally traveling on Northern Boulevard in a westerly direction, or making a turn from Sussex Road to proceed in a westerly direction along Northern Boulevard, and thus there was no duty on the State to provide guardrails complete with cables at this point. As the court below points out (p. 173): '' The path chosen was not a shoulder (*Wager* v. *State of New York,* 257 App. Div. 580); nor a crosswalk between two streets (*Murphy* v. *State of New York,* 283 App. Div. 980); nor an unguarded ditch at the end of a public highway (*Marcario* v. *City of New York,* 278 App. Div. 712); nor a public hunting preserve onto which the public was invited (*Le Roux* v. *State of New York,* 307 N. Y. 397).'' Further claimant did not inadvertently deviate from the highway. Rather after having left the safety of the sidewalk to enter the highway to proceed thereon in the wrong direction (Vehicle and Traffic Law, § 1234, subd. [a]), he intentionally left the highway to return to the

sidewalk at that particular point. As the court below stated (p. 173): "He did not mistake this grassy area for the highway or for the shoulder or for the sidewalk. Indeed he made no mistake at all. He intended to ride on the grass and he did so. Had there been any deviation from his intention, the deviation would have landed him on the safer way to travel." In our opinion even if the State could be held to foresee that a bicyclist at that point would be proceeding on the wrong side of the road, it could reasonably assume that such a traveler would select the patently safe method of returning to the sidewalk rather than intentionally proceed through an area marked by warning posts and obviously not intended for pedestrian or vehicular traffic. Thus even if we were to assume that there was not an adequate barrier to protect a traveler who was compelled in an emergency to proceed in that direction, we would still be required to find an adequate warning to those who would choose intentionally and with deliberation to proceed through the area. Nor does claimant's immaturity change these considerations. While we, of course, concede that a greater degree of care must be exercised toward children of tender years, the degree of care required in a given situation depends on the foreseeability that children will, in fact, come in contact with the dangerous condition, if such exists, and the degree of danger involved. The State cannot be expected to "child proof" its entire highway system.

While the decision of the Court of Claims did not reach the important question of contributory negligence because it found no negligence on the part of the State, we feel some comment on this aspect of the case is in order. The factual evidence indicates that claimant was *sui juris*. And even accepting the premise that the standard of care for an infant is not as high as an adult, it is evident that even the most limited standard of care or the exercise thereof here would have prevented the accident. If claimant was concerned about tires on his borrowed bicycle he could easily have dismounted and walked the bicycle across the street rather than proceed into a busy street against the traffic. And in any event he could have avoided all danger either by crossing Sussex Road, turning right before reaching the white guardposts in front of the grassy area and proceeding onto the safe shoulder on the southerly side of Northern Boulevard or by continuing in the same direction across Northern Boulevard and turning into the extreme right traffic lane, the shoulder or sidewalk. Instead he proceeded into an area guarded by warning posts and not shown to have been used by pedestrians or vehicles. Further it is inconceivable that claimant, who was

riding a 26-inch bike and was 5 feet 8 inches tall, could not have seen enough of the culvert or ditch in time to stop unless he was traveling too fast or was not looking where he was riding.

The judgment of the Court of Claims should be affirmed.

HERLIHY, J. (dissenting). The infant claimant, nearly 13 years of age, testified that on July 23, 1956, a clear dry day, at approximately 3:30 in the afternoon, he was riding a borrowed bicycle in a westerly direction on the south sidewalk parallel to Northern Boulevard. Before reaching the southeast corner of Northern Boulevard and Sussex Road he cycled off the sidewalk, in order to avoid the high curb, onto Sussex Road and continued traveling westerly across the road. In attempting to return to the sidewalk he slowed down and rode to the right of the southwest curb of the intersection, passed between two white posts, two and one-half to three feet high, described as guideposts, travelled a short distance, at which point he dropped approximately three and one-half feet below the grassy area into a drainage culvert. He also stated that he was unable to see the culvert as he travelled on the grassy area and that he was not familiar with the intersection.

Photographs in evidence showed the condition described by the infant claimant.

Infant claimant's friend testified that he had fallen into the culvert while riding his bicycle a year prior to the accident, but did not report the incident.

An engineer, employed by the State, whose testimony in an examination before trial was read into the record, stated that the culvert was built for the State in 1928; that he had observed a growth of vegetation around the surface of the culvert and that there was a growth of vegetation of medium density at the beginning of the headwall of the culvert, which was four to five inches above it.

Under these circumstances, in my opinion the condition existing at the place of the accident, and which was created by the State, required a barrier affording greater protection than the two lone white posts as described by the witnesses and portrayed in the exhibits.

The test is well stated in *Countryman* v. *State of New York* (251 App. Div. 509, 513, affd. 277 N. Y. 586): "There is no general or infallible rule as to the location or strength of barriers. They are to be placed where the way is perilous or where there are unusual or exceptional conditions, and they must be of a kind and so located as to furnish ' protection for travel generally.' " (*Mason* v. *Town of Andes,* 261 App. Div.

354, affd. 287 N. Y. 616; *Huston* v. *County of Chenango,* 253 App. Div. 56, affd. 278 N. Y. 646.)

In *Garrow* v. *State of New York* (268 App. Div. 534, affd. 294 N. Y. 741), aside from affirming the theory of negligence, the court stated (pp. 537–538): "More care must be exercised toward children than toward persons of mature age. Children of tender years are entitled to care proportioned to their inability to foresee and avoid the perils that they may encounter. The duty to avoid doing them an injury increases with their inability to protect themselves and with their childish indiscretions, instincts and impulses."

The *McCauley* case, upon which the majority places great reliance, is not applicable. There, on a stormy Winter night, an automobile traveling on the slippery highway went off the shoulder on its own side of the pavement and then proceeded across to the wrong side of the road onto the shoulder, between guardposts, down an embankment and into a river. The bizarre facts therein have little to do with the present case where a boy, riding a bicycle on the sidewalk and in the process of crossing an intercepting road to return to the sidewalk, went between guardposts and into the culvert. The reference to automobile traffic on Northern Boulevard has no application here.

The majority, in discussing the question of contributory negligence, attempt to rationalize what the claimant could or should have done but such speculation is no predicate for a finding of contributory negligence on the part of the claimant by this court.

The Court of Claims, in arriving at its determination of failure of proof, considered an erroneous rule of conduct. The question of whether the claimant was a licensee or trespasser was not in issue. The applicable rule required the State to use reasonable care and which, if applied, might have resulted in a different verdict. If for no other reason — and there are others — the claimant is entitled to a new trial. The basis for the court's dismissal of the complaint was error. (*Marcario* v. *City of New York,* 278 App. Div. 712.)

The judgment of the Court of Claims should be reversed, on the law and the facts, and a new trial granted.

GIBSON, P. J., and HAMM, J., concur with REYNOLDS, J.; HERLIHY, J., dissents, and votes for reversal and a new trial, in opinion, in which AULISI, J., concurs.

Judgment affirmed, without costs.