ANNETTE GARZIONE, Respondent, *v.* VASSAR BROTHERS HOSPITAL, Appellant.

First Department, May 11, 1971.

*James M. O'Brien* of counsel (*Clune & O'Brien,* attorneys), for appellant.

*Harold Sylvan* for respondent.

EAGER, J. The defendant hospital appeals from a judgment entered against it upon a verdict of a jury for $150,000 rendered in an action brought to recover for the amputation, without plaintiff's consent, of her right leg below the knee. As a matter of law, however, the record fails to support a recovery against the hospital for other than nominal damages.

Serious injuries to plaintiff's leg, occasioned in an automobile accident, and the conditions resulting therefrom, for which the hospital was in no way responsible, rendered an amputation necessary as a matter of good medical practice. As a result of the accident, which occurred on February 2, 1969, the plaintiff sustained "compound, comminuted fractures of the right leg, ankle, and femur as well as the os calcis". Extensive surgery was performed but because of loss of soft tissue and skin, the bone was exposed and pedicle and skin grafting were required. Necrosis set in and the pedicle grafting did not take. On April 3, 1969, the plaintiff was brought into the operating room and placed under anaesthesia with the intent to make a further attempt to reset pedicle grafts. At the point of the fractures, there was virtually no soft tissue covering the bones. On removal of the plate holding the bones together, the lower part of the limb "virtually fell off, became detached, except for a small bit of soft tissue on the back edge, or posterior aspect". Necrosis was present requiring the removal of further tissue, and the doctors then determined that pedicle grafts could not be reset. The medical testimony was that amputation was necessary; that no physician would delay it. One doctor testified: "I cannot conceive of a delay". There was no evidence, either by expert testimony produced by plaintiff or otherwise, that the lower portion of the leg could have been saved. In fact, the plaintiff, a registered nurse, describing "necrosis" as "dead tissue", admitted that it was necessary to remove the tissue; otherwise the infection could go above the right knee with the possible loss of more of the leg.

The physicians, who directed and performed the amputation, were not in the employ of the defendant hospital. There was no showing that they lacked ordinary competency or skill, and their testimony was that the amputation was required and performed

by them in accordance with proper medical standards. There was no evidence to the contrary.

Nevertheless, the plaintiff, relying on *McCandless* v. *State of New York* (3 A D 2d 600, affd. 4 N Y 2d 797) and *Schloendorff* v. *Society of N. Y. Hosp.* (211 N. Y. 125), contends that the hospital, in the absence of a specific consent to the amputation, should have halted the operating procedures by refusing the use of its staff and equipment; that, having failed to do so and having aided the physicians in the amputation, it participated in an assault and trespass upon her person and became liable for the loss of her limb. But, certainly, where surgical procedures are prescribed to be conducted without delay, a hospital ought not to be placed in a position of "be damned if you do and be damned if you don't"—that is, subject to liability to general damages for its participation in a course of action prescribed by a patient's physicians in the exercise of their medical judgment and also subject to liability if it fails to co-operate in such a course of action.

The responsibility of a hospital should ordinarily be determined on the basis of a general rule that it is under the primary duty to follow the directions of physicians rendered in the course of the proper treatment of a patient. (See *Toth* v. *Community Hosp. at Glen Cove,* 22 N Y 2d 255.) Serious consequences to a patient, including in a particular case the endangering of his life, could result from a rule sanctioning the interference with a course of action directed by competent physicians. So, it is held that the administrative or nursing staff of a hospital may not ordinarily invade the area of a physician's responsibility and interfere with surgical procedures directed by him in the exercise of his medical judgment. (See *Toth* v. *Community Hosp. at Glen Cove, supra; Fiorentino* v. *Wenger,* 19 N Y 2d 407.)

Here, the determination to immediately amputate was particularly of a nature required to be made in the exercise of medical judgment by the physicians in charge. (See *Fiorentino* v. *Wenger, supra,* p. 416.) Having made such determination, the responsibility for going forward with the amputation should be placed solely on the physicians who were bound to proceed reasonably and prudently in accordance with proper medical standards. If they failed to so proceed, the wrong would be solely that of the physicians who were pursuing an independent calling. (Cf. *Schloendorff* v. *New York Hospital, supra,* p. 132.)

Furthermore, assuming that the operative procedures, occurring without plaintiff's specific consent, amounted to an actionable assault and that the participation therein of the defendant hospital established the basis for a cause of action, the plaintiff's

recovery would be limited to such damages as were occasioned by the alleged assault. The plaintiff, however, failed to prove that she was damaged by the amputation of a leg which could not be saved. As aforenoted, the plaintiff did not present testimony or other proofs to refute the testimony of the attending physicians that the amputation was necessary in view of the condition of plaintiff's leg. As a matter of undisputed fact, the injuries received in the automobile accident and the resulting conditions required the amputation, and there was lacking a causal relationship between the alleged wrongdoing of the defendant hospital and the loss of plaintiff's limb. Having failed to prove any damages causally related to her lack of consent to the amputation and the consequent assault, the plaintiff's recovery should be limited to a nominal sum.

Particularly, it is noted that the trial court instructed the jury to take cognizance of the fact that, by virtue of payments by the alleged automobile tort-feasor and the doctors performing the amputation, the plaintiff had received the sum of $100,000 for her injuries, including the amputation of her leg. Then, without exception, the court directed the jury that if "you found that the total recovery that she is entitled to from the [defendant] Vassar Brothers Hospital, assuming you find them liable, is less than $100,000, then you will bring in a verdict for the plaintiff * * * in the sum of $1"; also that if "the recovery that she has received adequately compensated her, the form of your verdict will be: 'We find in favor of the plaintiff in the sum of $1.'" The charge of the court, acquiesced in by the parties, became the law of the case, and, absent a showing of a basis for general damages resulting from the amputation — proof supporting a finding that the leg could be saved and of the prognosis and condition of the limb if saved — the verdict rendered against the hospital should have been limited to the nominal sum of $1.

Accordingly, the judgment against the defendant should be modified on the law to direct a recovery by the plaintiff against the defendant hospital of the nominal sum of $1 without costs to either party, and the judgment otherwise affirmed without costs and disbursements of the appeal.

KUPFERMAN and STEUER, JJ. (dissenting). We dissent.

Plaintiff had for some time made it clear to all that she did not want her leg amputated. Responsible members of the hospital's personnel were well aware of this at the time and made active, though unsuccessful, attempts to obtain consent. Moreover, there was no emergency — for though there was convincing testimony that the leg would have to be amputated at an

early date, it was not contended that if the operation were not performed that day the plaintiff's life was in danger. Consequently, performing the operation, to which the hospital knowingly lent its facilities, constituted an assault for which plaintiff would be entitled to at least nominal damage. However, it is our opinion that the award by verdict of $150,000 is not supported by the evidence. Plaintiff has already received by previous settlement the sum of $10,000 from the automobile tortfeasor, and $90,000 from the physicians who participated in the amputation. The hospital is, of course, not responsible for the original injuries, which eventuated in the amputation of the plaintiff's leg without her consent. It is at best questionable whether plaintiff can prove that she suffered damages in excess of the sums already received for what, on the present record, is merely a premature amputation. However, we believe that we may not preclude her in that respect. We therefore vote to set aside the verdict as against the weight of the evidence and to order a new trial.

STEVENS, P. J., and NUNEZ, J., concur with EAGER, J.; KUPFERMAN and STEUER, JJ., dissent in opinion.

Judgment, Supreme Court, New York County, entered on June 23, 1970, modified, on the law, to direct a recovery by the plaintiff against the defendant hospital of the nominal sum of $1 without costs to either party, and otherwise affirmed, without costs and without disbursements of this appeal.