■ FRANCIS PIGNO, an Infant, by His Guardian ad Litem, VINCENT PIGNO, Appellant, v. LOUIS BUNIM, Defendant, and ISRAEL L. SCHMIERER et al., Respondents.— In a medical malpractice action to recover damages for personal injuries, plaintiff appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Suffolk County, entered March 10, 1972, as is in favor of defendants Israel Lewis Schmierer and Maimonides Hospital, upon the trial court's dismissal of the complaint as to said defendants at the close of plaintiff's case. Judgment reversed insofar as it is in favor of defendant Israel Lewis Schmierer, on the law, and, as between plaintiff and said defendant, action severed and new trial granted, with costs to abide the event. Judgment affirmed as to defendant Maimonides Hospital, without costs. The appeal did not raise questions of fact. In our opinion, affording plaintiff the benefit of all the fair and reasonable inferences, there was sufficient evidence to justify a verdict against defendant Dr. Schmierer, but not against Maimonides Hospital (*Cappell* v. *Board of Educ., Union Free School Dist. No. 4, Northport*, 40 A D 2d 848; *James* v. *Holder*, 34 A D 2d 632). The record is devoid of any evidence to create an issue of improper conduct on the part of the hospital's nurses or internes which contributed to plaintiff's injury. Plaintiff, an RH baby, was born on May 16, 1953 with a blood disease resulting from the incompatibility between the RH negative blood of his mother and his RH positive blood. A result of this incompatibility is the production of a poison known as bilirubin which flows through the blood stream and causes irreversible brain damage. In accordance with accepted medical practice, a complete blood exchange transfusion commenced shortly after birth. The process was halted after 120 cc. of blood had been exchanged, because the baby became cyanotic. It was not resumed until four days later. During that time the baby developed deep jaundice, a sign of the progress of the bilirubin, and, by May 20, showed signs of kernicterus, the invasion of the brain by bilirubin. There is testimony in the record to the effect that defendant Dr. Schmierer and the transfusionists, who were independent practitioners not on the paid staff of the defendant hospital, postponed the transfusion because the baby was still cyanotic. Dr. Schmierer testified that bilirubin tests were of vital importance, that proper medical practice required the taking of such tests and that he had ordered the baby constantly monitored and bilirubin tests to be made every eight hours. The hospital records do not confirm that testimony. Furthermore, even assuming he had given such orders, a jury might find him remiss, as the physician in charge of the case, in failing to check that the orders were being carried out in an area as critical as this was. Physicans are not liable for mistakes in professional judgment, provided that they do what they think best after careful examination (*Pike* v. *Honsinger*, 155 N. Y. 201, 210; *Cunningham* v. *State of New York*, 10 A D 2d 751). However, liability can ensue if their judgment is not based upon intelligence and thus there is a failure to exercise any professional judgment (see *DuBois* v. *Decker*, 130 N. Y. 325, 329–330; *Kaminsky* v. *Sarnoff*, 220 App. Div. 286). Giving plaintiff the benefit of all reasonable inferences, a jury could find that the

decision to postpone the transfusion was not the result of careful analysis. There is no indication in the hospital records that plaintiff remained cyanotic; nor is there an indication that bilirubin tests were made every eight hours. The doctor's order sheet for plaintiff was missing from the hospital records. No results of such tests appeared in laboratory reports or in nurses' notes. Dr. Schmierer apparently made no notation of the results of such tests or of their effect on the prescribed course of treatment. Dr. Schmierer at one point testified that the transfusion should have been completed within a matter of hours, although at other points he testified that the delay was proper. He also testified that he had relied upon the opinion of the transfusionists, although the hospital records do not indicate that they examined plaintiff between the first and second transfusions. A jury could therefore find that the delay was not one based upon careful evaluation (cf. *Fisher* v. *Greenberg*, 246 App. Div. 609). There is sufficient proof in the record to show that plaintiff's current condition was caused by the kernicterus, which, in turn, was the result of the delay in transfusing him (see *Toth* v. *Community Hosp. at Glen Cove*, 22 N Y 2d 255, 261). Martuscello, Acting P. J., Latham and Benjamin, JJ., concur; Gulotta and Christ, JJ., concur in the determination as to defendant Dr. Schmierer, but otherwise dissent and vote to reverse and grant a new trial as to defendant Maimonides Hospital, with the following memorandum: In our opinion, there was a jury question to be decided with respect to the defendant hospital as well as with respect to defendant Dr. Schmierer and, therefore, it was error to take the case away from the jury and dismiss the complaint as to these two defendants. There is sufficient evidence in the record for finding the hospital liable for the acts of the transfusionists, who were staff members and the official designees of the hospital in charge of transfusion services (*Fiorentino* v. *Wenger*, 19 N Y 2d 407, 414; *Bing* v. *Thunig*, 2 N Y 2d 656, 666). The jury could have found that they had been derelict in failing to timely resume the transfusions on their own volition or, alternatively, that they had disobeyed Dr. Schmierer's orders to resume the transfusion and that his orders were not clearly contraindicated (*Toth* v. *Community Hosp. at Glen Cove*, 22 N Y 2d 255, 264, 265, n. 3). On the proof, the jury could also have found that both they and the hospital employees (nurses and internes) did not properly monitor the child to determine when to resume the transfusions and that that was their responsibility.