■ DOROTHY L. ULMA, as Administratrix of the Estate of WILLIAM F. ULMA, Deceased, Appellant, v YONKERS GENERAL HOSPITAL et al., Respondents.—In a consolidated medical malpractice action, plaintiff appeals from a judgment of the Supreme Court, Westchester County, entered June 4, 1975, which is in favor of (1) the defendant Yonkers General Hospital, upon the trial court's dismissal of the complaint as against the said defendant at the close of the plaintiff's case, and (2) the defendant Dr. Eugene I. Senal, upon a jury verdict. Judgment affirmed, without costs or disbursements. The proof at the trial established that on December 21, 1970, plaintiff's decedent, her late husband William Ulma, was taken to the emergency room of the defendant Yonkers General Hospital complaining of abdominal pain and exhibiting signs of hyperventilation. Upon arriving at the emergency room, he went directly to the lavatory where he remained for approximately 20 minutes. After emerging from the lavatory and registering with the emergency room personnel, Mr. Ulma was examined by the intern on duty and was given a blood test and a urinalysis. The plaintiff testified that she, in accordance with her husband's direction, directed the hospital to "get his doctor, Dr. Rudnikoff" and that she "understood Dr. Rudnikoff was coming." After the intern's examination of Mr. Ulma, Dr. Rudnikoff was telephoned, but the call was answered by the latter's partner and associate, the defendant Dr. Senal, who was "on call" that night. Mr. Ulma's complaints and test results were communicated to Dr. Senal, who diagnosed the condition as gastroenteritis and prescribed Compazine—a drug for relieving pain and nausea. Dr. Senal directed the hospital to send the patient home with instructions to contact him at any time. Within approximately a half hour to 60 minutes from the first call, the hospital called again, explaining that the patient still felt ill and that the family thought the patient too ill to take home. At this point Dr. Senal stated: "All right, I'm coming in." Upon his arrival at the hospital, the record on this appeal indicates that Dr. Senal carefully and thoroughly examined Mr. Ulma. His examination included elicitation of a history from the patient, review of the hospital tests, examination of the patient's heart by stethoscope, palpation of the abdomen, examination of a specimen of "vomitus" for presence of bile or blood and a check of the patient's groin pulse for signs of an aortic aneurysm which could possibly produce abdominal pain. After that examination Dr. Senal determined that Mr. Ulma was suffering from gastroenteritis and that admission to the hospital was not necessary. Upon that decision, the patient, with his wife and daughter, left the emergency room and walked through the hospital parking lot to the family car. Upon reaching the car, Mr. Ulma tragically collapsed and died. The autopsy established the "cause of death" as "occlusive coronary arteriosclerosis" and "old myocardial infarct". The Westchester County Medical Examiner, called by plaintiff, testified that his findings were consistent with an "electrical death of the heart"—i.e., ventricular fibrillation. Further, plaintiff's attorney questioned that witness as follows: "Doctor, do you mean by that, are you saying by that, that in this instance, that this occurred without symptom, without warning, prior to his death; are you saying that or not? A. Absolutely." Dr. Senal's medical expert, a cardiologist and internist, testified that Mr. Ulma "had a sudden death, sudden instantaneous death, * * * due to what we call ventricular fibrillation, which occur [sic] in a matter of seconds." Plaintiff's expert, an anesthesiologist, testified that had Mr. Ulma been treated in the manner he prescribed, the latter's "chances [of survival] would have been 50 per cent."

The record herein clearly justified the trial court's dismissal of the complaint as against the defendant Yonkers General Hospital. The decedent's treatment had been taken over by the family's private physician and the record contains no facts from which the jury could reasonably find negligence as against the hospital before the arrival of the family physician (see *Garzione v Vassar Bros. Hosp.*, 36 AD2d 390, affd 30 NY2d 857; *Pigno v Bunim*, 43 AD2d 718, affd 35 NY2d 841; cf. *Toth v Community Hosp. at Glen Cove*, 22 NY2d 255). Doctors "are not liable for mistakes in professional judgment, provided that they do what they think best after careful examination *(Pike v. Honsinger*, 155 N. Y. 201, 210; *Cunningham v. State of New York*, 10 A D 2d 751)" *(Pigno v Bunim*, 43 AD2d 718, *supra).* Here, the record clearly demonstrates that the hospital physician and Dr. Senal exercised due care in the diagnosis and treatment of the decedent and that death was due to a tragic eventuality beyond the control of medicine today. We have examined the appellant's contentions as to prejudicial court rulings and conduct of the trial. We find these to be without merit. In passing, we note that the preferable foundation for eliciting a medical expert's opinion is that the opinion be stated with a "reasonable degree of medical certainty"; therefore, the trial court's utilization of that standard did not constitute error or officious interference with the trial of the action. Martuscello, Acting P. J., Cohalan, Damiani, Shapiro and Titone, JJ., concur.