■ HARRIET BURKE, as Administratrix of the Estate of MICHAEL BURKE, Deceased, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 59180.) —Appeal from a judgment, entered February 3, 1977, upon a decision of the Court of Claims. The claimant asks this court to reverse the decision of the Court of Claims and to hold the State liable in damages for the wrongful death of Michael Burke as the result of a fire which occurred on June 28, 1974 at the Central Islip Psychiatric Center. The decedent was admitted to the said institution on December 15, 1973 on a voluntary application. He had a prior history of at least 12 admissions to mental institutions. At the time of the last admission he was diagnosed as having "Schizophrenia, Chronic Undifferentiated Type". On June 25, 1974 he was transferred from the psychiatric part of the hospital to the Medical-Surgical Building because of physical ailments including cellulitis in the right leg and chronic venous insufficiency in both legs. To facilitate supervision he was placed in a single room opposite the nurses' station. On June 28, 1974, at approximately 5:20 P.M., the decedent was discovered by the ward nurse standing with his pajamas and mattress on fire. He died some six hours later, with burns on over 65% of his body listed as a contributing cause of death. The Court of Claims found, among other things, that the origin of the fire was unknown, that there was no conclusive proof as to how it started and that there was no evidence presented that the number of attendants or nurses on duty at the time of the fire was insufficient or that they were lax in their duties. A further finding was made that the decedent had not exhibited suicidal tendencies so as to have called for a total prohibition against the use of matches and cigarettes, the apparent cause of the fire. We find no reason, in examining this record in its entirety, to disturb any of these findings of fact or the conclusion based thereon that negligence on the part of the State had not been established. A claimant seeking to prevail in a case of this nature must affirmatively prove that the decedent's death was caused by reason of breach of some duty on the part of the State *(Hirsh v State of New York,* 8 NY2d 125; *Kowalski v State of New York,* 7 AD2d 762). The claimant herein had the burden of either establishing that the fire resulted from the negligence of the State in permitting the decedent to obtain the means by which to start it *(Hirsh v State of New York, supra)* or that the State, with full knowledge of any suicidal tendencies on his part, failed to exercise supervision adequate to prevent him from taking his own life *(O'Connor v State of New York,* 58 AD2d 663). Even if we were to accept claimant's argument that the decedent had suicidal tendencies, we would reach the same result. "It is well established that the State is not required to provide 24-hour supervision even to suicidal patients" *(O'Connor v State of New York, supra,* pp 663–664; *Fernandez v State of New York,* 45 AD2d 125). Judgment affirmed, without costs. Kane, J. P., Staley, Jr., Main and Larkin,

JJ., concur; Mikoll, J., dissents and votes to reverse in the following memorandum: Mikoll, J. (dissenting). I respectfully dissent for the following reasons: The decedent, Michael Burke, was a mentally ill schizophrenic in the care and custody of the Central Islip Psychiatric Center since December 15, 1973. At the time of his death he had been in the Medical-Surgical Building for treatment of cellulitis and chronic venous insufficiency in both legs. On June 28, 1974 a fire started in the mattress of his bed and he subsequently died from his burns. The Court of Claims, in dismissing the complaint, said, in pertinent part: "Failure to guard against a remote possibility of accident has never constituted negligence. *Morris v. Troy Sav. Bank,* 32 A D 2d 237, affd. 28 N Y 2d 619. A different situation would arise if the patient exhibited suicidal tendencies, then proper medical judgment would call for a prohibition of the use of matches and cigarettes. The claimant contends that her husband was suicidal at the time of his unfortunate demise. However, his hospital record indicates otherwise. In addition, his attending psychiatrist, Dr. Roman Moroz, testified that although he had had prior suicidal ideations (approximately four years prior to this last admission) the deceased was not considered a danger to himself. That conclusion was reached as a result of his talks with the deceased and the deceased's behavior while a patient at Central Islip. At worst that opinion was an honest error of medical judgment for which the State could not be held liable. *St. George v. State,* 283 App. Div. 245, affd. 308 N.Y. 681." The court further found that the doctrine of *res ipsa loquitur* did not apply and that no proof of negligence had been forthcoming from claimant. These findings are at variance with the evidence in the record which fully documents that Michael Burke was a seriously impaired schizophrenic, who was admitted six months before, after a suicide attempt involving the use of gas and the cutting of his wrists and who, while in the care of the hospital, disclosed a fixation for fire alarms and matches and was dangerous to himself and others. His treating physician opined that the decedent was not suicidal at the time of his untimely death. The professional opinion of Dr. Moroz by his own statement was based on the fact that Burke had no suicidal ideations for the past four years. It is on this opinion that the trial court mistakenly based its judgment in isolating the State from responsibility for the actions of its employees. The physician's own testimony belies his self-serving statement that Mr. Burke was not suicidal and a danger to himself. It is apparent that Dr. Moroz did not secure any information from the patient which would serve as a reasonable basis on which to make an informed professional judgment as to whether the patient was suicidal. The physician stated in response to an interrogatory intended to search for the basis of his professional judgment: "I might or might not have asked him this question about suicidal tendencies. I suppose I didn't talk very much about it because he was very disturbed". The doctor further stated: "How you can make sure that the patient is suicidal *just by talking to the disturbed patient* * * * I stated that he was very, very psychotic. Now, how you, from a psychotic patient, can find out whether he was suicidal or not?" (Emphasis added.) The physician had available to him other facts which clearly dictated that special care should have been given to Burke to protect him from his malady. Exhibit 12, a report of Officer Tohill who investigated the cause of death and which report was based on hospital notes, indicates that a suicide attempt on December 15, 1973, six months before, brought Mr. Burke to the hospital and that on his admission he was noted to be suicidal. This completely undercuts the physician's self-serving statements that the patient was not suicidal at the time of his death because he had not

had suicidal ideations for four years past. The physician should have known that Mr. Burke had set off numerous fire alarms and that just 17 days preceding his death, he had set fire to his slippers and was described as unmanageable and uncontrollable and had to be restrained. On June 22, six days preceding his death, he had to be confined to a straight jacket to protect him and others from his aberrations. On the day of his death, he set off several fire alarms. The treating physician, in the exercise of ordinary care, should have provided adequate safeguards in keeping such a patient isolated from matches. He failed to do this. No instructions were given to the professional staff indicating that any special vigilance was required as to Mr. Burke in this regard after his placement in a medical unit for treatment of his physicial ailments. Patients were permitted to move about freely in this unit and to smoke in the dayroom. Burke was often seen smoking. Just a short while before the fire he was seen in the hall, moving about unsupervised. Burke was placed in a situation where instruments of his own destruction were readily available to him. As the trial court noted, "apparently the deceased set the mattress on fire by means of a match or cigarette, fell asleep smoking". Reasonable care is required to protect patients against themselves (*Hirsh v State of New York,* 8 NY2d 125). On a review of this record, it cannot be concluded that reasonable care was given to this patient. The hospital authorities had abundant knowledge of decedent's fascination with fires and fire alarms and of his disturbed, dangerous condition. Such knowledge merits the conclusion that they were negligent in preventing the self-inflicted harm of a patient in their charge. The degree of care to be observed is measured by the patient's physical and mental ills and deficiencies as known to the officers and employees of the institution (*Martindale v State of New York,* 269 NY 554; *Weihs v State of New York,* 267 App Div 233). The hospital failed to act reasonably in view of what they knew of this patient. Aside from the question of suicidal tendency, which I find sufficiently established in the record, reasonable prudence dictated that mental patients should not be allowed to smoke or have matches without proper guidance. In the case of a person who had a fixation for fire alarms and had within 17 days set fire to his slippers, greater caution was indicated than was here exercised. The judgment should be reversed, and the matter remitted for further proceedings not inconsistent with this decision.