■ JEFFREY KOENIGSMARK, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 60872.) — Appeal from a judgment, entered September 18, 1978, upon a decision of the Court of Claims, which dismissed the claim after trial of the issue of liability only. Claimant Jeffrey Koenigsmark allegedly attempted suicide by jumping in front of a moving vehicle after an escape from Elmira Psychiatric Center on April 16, 1975. Claimant instituted this action alleging that respondent's negligence and malpractice in his care, treatment and supervision while he was a voluntary inpatient at the named facility, was the proximate cause of his injuries. The decision of the Judge of the Court of Claims sets forth accurately and in detail the basic facts of the case as well as a discussion of the legal principles involved. The decision of the court should be affirmed. It is significant to note that on the date of the accident claimant was a voluntary patient at the institution (Mental Hygiene Law, § 9.13) and if unlawfully detained, would be entitled to the relief provided by section 33.15 of the same law. It should also be noted that the accident did not happen on the property of the institution, but claimant left the premises and shortly thereafter apparently jumped in front of a moving automobile. At the argument, great reliance was placed by claimant on the

case of *Cohen v State of New York* (51 AD2d 494, affd 41 NY2d 1086). There are numerous distinctions between the actions, perhaps the most important being that in *Cohen,* the court found in favor of claimant. Also in that case, there was a finding that the psychiatrist in charge of the claimant was not properly qualified. This situation, however, does not exist in the present case. In the Court of Appeals, the claimant in *Cohen* was an appellant and only argued on the issue of the reduction of the verdict by this court, and the Court of Appeals in its memorandum decision made it very evident that it was only deciding that issue. The *Cohen* case is, therefore, not controlling in the present circumstances. The record demonstrates that claimant's mental condition might be described as "up" and "down". He might, in the strict sense of the word, be entirely rational and within a short period of time, because of some emotional or other condition, become irrational. It is apparent that in conformity with the existing method of treatment of such patients at the time, the hospital took all reasonable precautions and this is amply demonstrated by the record as a whole. (See *Hirsh v State of New York,* 8 NY2d 125, 127; *Taig v State of New York,* 19 AD2d 182, 183; *Seavy v State of New York,* 21 AD2d 445, 451, affd 17 NY2d 675.) The other alleged errors have been considered and found to be not so egregious as to require a new trial. The judgment of the Court of Claims should be affirmed. Judgment affirmed, without costs. Casey, Yesawich, Jr., and Herlihy, JJ., concur.

Main, J. P., and Weiss, J., dissent and vote to reverse in the following memorandum by Weiss, J. Weiss, J. (dissenting). We respectfully dissent. We cannot agree that the Court of Claims properly dismissed the claim after a trial of liability only. The record reveals that claimant had a four-year history of treatment for schizophrenia, manic depression with suicidal tendencies, starting in 1971. Between December 6, 1974 (when claimant was admitted to the inpatient program at Elmira Psychiatric Center [Elmira]) and April 16, 1975 (when claimant escaped from Elmira and threw himself in front of an automobile in an alleged suicide attempt), he spoke to the Elmira staff about killing himself by hanging, shooting, jumping out of a window, or starvation. During this same period of time, claimant escaped from the facility five times and actually attempted suicide three times. The Elmira staff had ample warning of claimant's suicidal tendencies from both his statements and actions. The claimant's behavior caused his primary treating physician, Dr. Chun, on April 1, 1975 before leaving on vacation, to order one-to-one supervision of the claimant; to suggest that the claimant's status be converted from voluntary to involuntary; and to write on the doctor's order sheet that claimant should have "close observation for agitation." Dr. Chun testified that the "close observation order" he gave on April 1, 1975 should have been continued for at least one month unless he expressly discontinued it. The record is devoid of evidence to show that Elmira (1) had a system of keeping patient records sufficient to give Dr. Quadeer (Dr. Chun's substitute) automatic access to or make him aware of the treatment orders and observations of Dr. Chun, (2) had an established system and policy with regard to carrying out doctor's orders which were understood by all personnel responsible for patient care, (3) had established a communication system for reporting changes in patient behavior to the treating physician when observed by personnel who care for the patient, and (4) had established a security system adequate to prevent escapes from the facility by patients. As a direct result of Elmira's failure to take these reasonable precautions, claimant was able to walk out of the facility and throw himself in front of a car. In view of claimant's known history of, and

propensity toward escape and suicide, the record reflects that the State, through its physicians, administrative personnel and patient care personnel at Elmira, did not take reasonable precautions to protect the claimant from himself. In the circumstances here, these failures are not errors of medical judgment. They constitute common-law negligence in the failure to take those steps necessary to make a medical judgment. A physician is negligent if he does not acquire sufficient information to make a medical judgment, or, if he fails to check to see that his orders for patient care are being carried out (see *Du Bois v Decker,* 130 NY 325, 329-330; *Pigno v Bunim,* 43 AD2d 718, affd 35 NY2d 841; *Kaminsky v Sarnoff,* 220 App Div 286). This is distinguished from mere error of judgment (cf. *Cohen v State of New York,* 51 AD2d 494, affd 41 NY2d 1086). Elmira, a facility for the treatment of the mentally ill, should have had a defined policy evidenced by a system whereby staff observations are communicated to doctors, and physicians' orders are communicated to the staff. It did not. On the very day claimant escaped and attempted suicide, the hospital charts show he expressed a desire to run away and do harm to himself. No steps were taken to prevent this. Information was communicated to his psychiatric social worker but not to Dr. Quadeer. The doctor stated that had he known this, he would have put claimant under close observation. We find this case similar to *Comiskey v State of New York* (71 AD2d 699), where we affirmed a decision of the Court of Claims holding the State liable for negligence in failing to properly supervise a person with known suicidal tendencies, and in permitting him to leave the hospital grounds when a physician had issued an order that he be kept under close supervision. The judgment should be reversed, and the matter remitted to the Court of Claims for a trial of the issue of damages.