■ RAPHAEL KILLEEN et al., Appellants, v STATE OF NEW YORK, Respondent. — In a claim to recover damages for personal injuries due to the alleged negligence of the State of New York, claimants appeal from a judgment of the Court of Claims (Rossetti, J.), entered November 23, 1983, which dismissed the claim at the close of trial.

Judgment reversed, on the law, and matter remitted to the Court of Claims for entry of a judgment in favor of claimants on the issue of liability, and for an assessment of damages.

The facts are not in dispute. Kevin Killeen had been diagnosed as suffering from severe mental retardation due to encephalopathy, with a maximum mental age of four years and one month. Throughout his life he had been placed in various institutions and programs for the mentally disturbed. In September, 1978, at the age of 23, Kevin was admitted to the Kings Park Unit of the Suffolk County Development Center. Thereafter, in September, 1979, he was placed in the center's "normalization" or "model apartment" program, which consisted of four or five patients with two staff members attending a two-hour session in a three and one-half room apartment. The goal of the program was to familiarize the patients with a home-like environment and to teach skills which would enable them to live outside the institution in a household setting. On November 14, 1979, as part of the program the patients were to have a morning snack at the dining room table. A supervising staff member had boiled water on the stove for the patients' tea or coffee. She then brought the pot of water to the dining room table, which was covered with a table cloth, and placed it on a trivet, three to four inches from the edge of the table. The patients came to the table, whereupon Kevin immediately sat down, and was told to stand up for the blessing of the food. As he began to stand, the pot fell over (either because he pulled the tablecloth or pushed the table) and the water spilled on Kevin's lap and legs, causing second degree burns.

At the close of the trial, the Court of Claims granted defendant's motion to dismiss the claim, finding that claimants had failed to establish by a preponderance of the evidence that the State was negligent. The court determined, *inter alia,* that the use of boiling water for coffee or tea was not inherently dangerous but was part of the goal of developing the patient's living

skills, that the risk of its accidentally spilling was not foreseeable, and that it was Kevin's conduct, not any negligence of the State, that caused the accident. While we do not dispute the court's factual findings, we believe it erroneously applied the legal concepts of foreseeability and proximate cause to those facts and accordingly we reverse the judgment appealed from.

It is well established that the State is under a duty to take every reasonable precaution to protect the patients in its various institutions from injury, self-inflicted or otherwise (see *Comiskey v State of New York,* 71 AD2d 699; *Zajaczkowski v State of New York,* 189 Misc 299, 302 [Court of Claims]). This does not mean, of course, that the State is an insurer against all injuries that might occur to mentally retarded patients in its care (see *Excelsior Ins. Co. v State of New York,* 296 NY 40, 45). To hold the State liable in all cases would be inimical to the State's ability, incentive and possibilities for the treatment of the mentally retarded (*Excelsior Ins. Co. v State of New York, supra,* p 46), and, indeed, deference is to be paid to professional medical judgment with regard to the course of treatment (see *Seavy v State of New of York,* 21 AD2d 445, affd 17 NY2d 675). Nevertheless, the fact that the decision to place Kevin in the program may have been a sound exercise of professional judgment and the fact that the structure of the program may have been appropriately tailored to accomplish the goal of "normalization" do not render unassailable the act of placing the boiling water on the table, which was never claimed to be essential to the program. The reasonableness of that conduct must be examined on its own (see *Doty v State of New York,* 33 Misc 2d 330 [Court of Claims]).

In our view, it was indeed foreseeable, and not remote or unavoidable as the Court of Claims and the dissent would have it, that a patient with Kevin's mental age would be injured by the boiling water. The "general risk" that a retarded patient would spill the pot of boiling water and be injured was "reasonably to be perceived" (see *Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 317; *Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 344). The precise manner of the accident need not have been foreseen (see *Derdiarian v Felix Contr. Corp., supra,* pp 316-317). Hence, the duty of the State to take reasonable precautions to protect patients in the institutions from injury, self-inflicted or otherwise, was breached by placing the pot of boiling water on the table (see *Comiskey v State of New York, supra; Zajaczkowski v State of New York, supra*). Nor can it be said, based on the law and the undisputed evidence in the case, that Kevin's action in causing the pot to spill was a superseding cause relieving the

State of liability. As the Court of Appeals has stated, "[a]n intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent" (*Derdiarian v Felix Contr. Co., supra,* p 316). Here, where the injuries which occurred were precisely those which might reasonably be expected to occur to a person of Kevin's mental age with a limited ability to judge the effects of his actions, the State cannot sidestep its liability.

Accordingly, the judgment dismissing the claim must be reversed. Since no fact issues remain to be resolved and, in view of our holding that the State's negligence was the proximate cause of the accident, judgment must be entered for claimants on the issue of liability and the matter remitted to the Court of Claims for an assessment of damages. O'Connor, Lawrence and Eiber, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment appealed from, with the following memorandum, in which Mangano, J. P., concurs: In my view, claimants have failed to demonstrate by a preponderance of the credible evidence that the alleged negligence of the State was the proximate cause of Kevin Killeen's injuries. Contrary to the majority's finding that the accident was foreseeable, the State could not have reasonably perceived that Kevin would accidentally cause a pot of boiling water to topple over and injure himself, particularly since the pot had not been placed in front of him. As the Court of Claims properly found, "[t]o opine, as did claimants' psychologist, that the use of boiling water is inappropriate because it carries a risk involving bodily harm is * * * an opinion colored by hindsight as to what subsequently occurred".

As per the testimony of Ilene Aaron, the leading therapist in the "model apartment program" in which the injured claimant had participated, there had been no negligence on the part of the State in accepting Kevin for this program. The goal of the program was to familiarize the participants with a living environment so that they would be accustomed to such basic arrangements upon their release into the community. Prior to his admission into the program, it had been determined, after careful consultation with the treatment team and the team leader, that Kevin's current level of functioning made him a good candidate for enrollment. Even claimants' counsel conceded that Kevin had been properly placed in the model apartment program.

Nor does the record contain any evidence of negligent supervision on the part of the State. On no occasion were the patients permitted to pour hot fluids into their own cups. Rather, it was

the function of the therapist to do this for them while the patients were seated around the table. As per the testimony of the State's expert psychologist, the program in which Kevin was a participant was suitable as part of a total normalization program. More specifically, the expert unequivocally testified that the use of hot water for tea and coffee was in keeping with the concept of normalization.

It is clearly the duty of the State to take every reasonable precaution to protect patients at its institutions from injury, whether self-inflicted or otherwise (*Comiskey v State of New York,* 71 AD2d 699; *Hernandez v State of New York,* 46 AD2d 712; *Castiglione v State of New York,* 25 AD2d 895, 896). As a general standard, the State is required to exercise reasonable care in restraining, supervising and protecting mentally deficient persons in order to prevent injury to themselves and others (*Jones v State of New York,* 267 App Div 254). This does not imply, however, that the State is obligated to keep each patient under constant 24-hour surveillance (*Hirsh v State of New York,* 8 NY2d 125, 127; *Comiskey v State of New York, supra; Hernandez v State of New York, supra; Castiglione v State of New York, supra*). The State is liable, rather, for injuries to its patients emanating from hazards and risks which could have been reasonably foreseen (*Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 344). No liability can be imposed for injuries resulting from unavoidable accidents. Nor should anyone be expected to guard against harm from events which are so unlikely to occur that the risk, although recognizable, is such as would commonly be disregarded (Prosser, Torts [4th ed], § 31, pp 146-147). In like manner, the State bears no liability for its medical judgments as to what constitutes appropriate therapeutic programs (see *Cameron v State of New York,* 37 AD2d 46, 49, affd 30 NY2d 596; *Taig v State of New York,* 19 AD2d 182, 183). To hold otherwise would, in effect, render the State an insurer and, as such, would unduly interfere with the carrying out of rehabilitative processes in State institutions (*Carlino v State of New York,* 30 AD2d 987, 988).

It is the duty of the State to care for and train an institutionalized patient such as Kevin, so that he can be restored "to a useful place in society" (*Excelsior Ins. Co. v State of New York,* 296 NY 40, 44). In accordance with this duty, the State placed Kevin in a normalization program, after a thorough evaluation of his suitability by professionals, in order to train him in the basic skills required for daily living. The situation in which the subject accident ensued was in keeping with the underlying concept of the normalization training.

The mere act of the therapist in placing a pot of boiling water on the table did not constitute negligence per se. A covered pot of boiling water is not an inherently dangerous instrument. Nor, as the Court of Claims properly concluded, did it create a foreseeable risk of injury. The record amply supports this conclusion.

The court had the unique opportunity of observing the witnesses and hearing their testimony. It was thus in the best position to determine questions of credibility (*Pape v State of New York,* 90 AD2d 904, 905). While sympathy towards the injured claimant is one's natural inclination in a case such as this, the holding, which embodied factual determinations and the credibility of witnesses, was peculiarly within the province of the Court of Claims as the trier of facts. Inasmuch as that court was exercising the function for which it was established, its determination "should not receive cavalier treatment by the appeal courts and be lightly disregarded" (*Harrow v State of New York,* 21 AD2d 571, 572, affd 17 NY2d 619).

In light of this tenet, the evidence, in my view, mandates an affirmance of the judgment dismissing the claim against the State.