OPINION OF THE COURT
Thomas J. McNamara, J.
The claim arises from an incident on October 10, 1991 in which claimant was struck by a car on Oriskany Street in the City of Utica. Claimant was in Utica to voluntarily receive treatment at the McPike Alcohol Treatment Center. Early on the day of the accident, he left the treatment center and bought a bottle of vodka. After drinking a substantial portion of the vodka, he returned to McPike. When the staff determined that he had been drinking, he was given a breathalyzer test in which he registered a reading of 0.22%. He was told that he was being discharged from the program. At that time, the policy at McPike was to send the intoxicated individual to the local rescue mission, the alcohol crisis center or home. Twice an offer was made to claimant to get him to a place where he could sober up but he refused. Claimant left the treatment center on foot at about 5:17 p.m. and indicated he was headed downtown. The accident occurred at about 7:30 p.m. on a dark street in the rain.
It is well established that before a defendant may be held liable for negligence, it must be shown that the defendant owes a duty to plaintiff (Palsgraf v Long Is. R. R. Co., 248 NY 339, 342). The issue of whether the staff at McPike owed a duty to *886 care for claimant when he returned to the facility in an intoxicated state is a question of law (Purdy v Public Adm’r of County of Westchester, 127 AD2d 285, affd 72 NY2d 1). The question of duty is best expressed as " 'whether the plaintiff s interests are entitled to legal protection against the defendant’s conduct’ ” (Pulka v Edelman, 40 NY2d 781, 782, quoting Prosser, Torts § 53, at 325 [4th ed]).
Generally, when a duty arises from a relationship between the parties such as doctor-patient, premises owner-invitee or employer-employee, it is based on one party’s specialized knowledge, or the ability to control circumstances which may affect the well-being of the other. In this claim, the relationship falls somewhere between that of a psychiatric facility-patient and tavern owner-intoxicated patron. In the former situation, the facility has a duty to exercise reasonable care to protect a patient from himself (Cohen v State of New York, 51 AD2d 494, affd 41 NY2d 1086; Hirsh v State of New York, 8 NY2d 125; cf., Koenigsmark v State of New York, 80 AD2d 707, affd 55 NY2d 928) while in the latter circumstances no such duty is owed to the intoxicated patron (General Obligations Law § 11-101; Rutledge v Rockwells of Bedford, 200 AD2d 36).
Although claimant, similar to a person receiving treatment at a psychiatric facility, was an inpatient at McPike, he was told that he would be discharged from the program for violation of the rules, including drinking. Claimant, like the intoxicated patron who becomes a danger to himself, and unlike the patient whose well-being may be threatened when his or her ability to reason becomes impaired, had no expectation that someone would protect him from the consequences of his impaired state. Furthermore, by advising clients, including claimant, that drinking would not be tolerated, McPike sought to limit the extent of its relationship with those who sought treatment. To impose a duty here would unfairly expand the relationship from treatment provider to caretaker.
Even assuming that defendant owed a duty to protect claimant while he was intoxicated, defendant did all that it could within the law. Mental Hygiene Law § 21.09[1] provides for emergency services for intoxicated persons and persons incapacitated by alcohol. The statute addresses situations in which an intoxicated person comes voluntarily to an alcoholism facility and those in which a person who appears to be incapacitated *887 by alcohol is brought to such a facility despite their objection. In the first situation, three options are provided by the statute: (1) treatment may be provided if the facility is willing to accept the person for treatment and the facility is suitable to render such treatment, (2) the person may be referred to another suitable facility for care and treatment or (3) the person may be sent home. In circumstances involving an incapacitated person, the statute authorizes a peace officer, a police officer or a director of community services, or the director’s designee, to take the person to an alcoholism facility for immediate observation, care and treatment or, if no such facility is available, to any other place authorized to give emergency treatment.
Claimant was a voluntary patient at the time he enrolled in the program and could be considered to have arrived voluntarily for treatment on his return to McPike on the day of the incident. John F. Robertson, the director at McPike, testified that individuals in an intoxicated condition were not accepted at McPike because the facility did not have the staff to provide adequate supervision and was not equipped to intervene medically if the circumstances required it. Consequently, intoxicated individuals were encouraged to go to the rescue mission, the alcohol crisis center or home. The policy as outlined by Mr. Robertson, and followed when claimant was found to be intoxicated on the day of the incident, tracks the procedure set forth in the statute: the facility was not suitable to provide care for an intoxicated individual, and so claimant was referred to a properly equipped facility. Claimant refused that offer.
Claimant, nonetheless, contends that given a breathalyzer reading of 0.22%, he was not capable of making a reasoned decision and the staff should have realized this and done something more. However, because the facility was not equipped to care for a person in claimant’s condition, the only options available were to let claimant leave or to transport him against his will to a suitable facility. Notwithstanding, neither the statute nor any other provision of law authorized the facility to hold claimant. Only peace officers, police officers and directors of community relations[2] are authorized to take an incapacitated person to an appropriate alcoholism facility. Had the staff at McPike transported claimant against his will, or held him until an authorized person could be called to do so, such action would have exposed the facility to a claim for false imprisonment.
*888 Inasmuch as McPike was not equipped to care for claimant while he was intoxicated and because the facility had no authority to take him involuntarily to a suitable facility, any duty owed to claimant was satisfied by the offer to assist in getting him to a place where he could sober up. Accordingly, defendant did not breach a duty of care and is not liable for the injuries suffered by claimant. The claim is, therefore, dismissed.

. Mental Hygiene Law § 21.09 has been amended since the time of the incident although not substantially. The applicable version may be found in chapter 978 of the Laws of 1977.

. A director of community services is the chief executive officer of a local governmental unit (Mental Hygiene Law § 1.03 [47]; § 41.03 [8]).