ELGIN, JOLIET & EASTERN RAILWAY COMPANY *v.*
WILLIAM C. HOOD.

[No. 3-274A26. Filed October 28, 1975. Rehearing denied January 5, 1976. Transfer denied January 17, 1976.]

*Winfield L. Houran, John E. Hughes, John R. Highland, Chester, Clifford, Hoeppner & Houran,* of Valaparaiso, for appellant.

*Rudy Kutansky, Stults, Custer, Kutansky & Pekofski,* of Gary, for appellee.

HOFFMAN, J.—Plaintiff-appellee William C. Hood (Hood) commenced this action in the trial court seeking recovery from defendant-appellant Elgin, Joliet & Eastern Railway Company (the railroad) for damages resulting from a collision between a truck owned by Hood and one of the railroad's engines. Trial was had before a jury, which returned a verdict in favor of Hood. Judgment was entered thereon, and the railroad filed a motion to correct errors, which was overruled. Subsequently, it perfected this appeal.

The railroad asserts on appeal that there was no evidence introduced at trial which could have served as a basis for the jury instruction given by the trial court on the doctrine of last clear chance, and that the jury's verdict is unsupported by any evidence that the railroad had the last clear chance to avoid the collision.

As to these issues, the facts most favorable to appellee Hood in the record establish that the collision between appellant's switch engine and appellee's truck occurred just before dawn on a rainy fall day. The tracks upon which the engine was traveling traverse a blacktop area located behind the main truck entrance gate to the manufacturing plant of "Gary Sheet and Tin." The tracks are at the same level as the surrounding blacktop surface, and run at an angle to the lanes of traffic leading to and from the truck gate.

On the morning in question, Hood proceeded to the premises of "Gary Sheet and Tin" to pick up his truck. Such vehicle

had been previously loaded with steel and parked on the opposite side of the tracks from the gate, and at some distance from the tracks. After warming up his truck for the morning's trip, Hood slowly drove toward the tracks and gate. As he approached the tracks, his view to the right was obscured by other parked trucks. Immediately before reaching the tracks, his view became unobscured and although he looked down the tracks in both directions prior to crossing them, he neither saw the locomotive nor heard a whistle or bell indicating the approach of a locomotive.

In fact, however, both Hood's vehicle and a switch engine were slowly converging on the same point. As the cab of Hood's truck passed over the tracks it was struck by the locomotive. Due to the weight of these two vehicles, the truck cab sustained considerable damage.

At the time of this incident, it was the railroad's practice to have a switchman ride on the front of each switch engine while it was moving. This individual's responsibilities included passing movement signals to the engineer. Such switchmen were, in effect, part of the eyes of the locomotive.

The individual fulfilling this responsibility on the morning of the collision here at issue testified that as the engine approached the truck lanes he observed Hood's truck moving toward the tracks. The switchman then attempted to attract Hood's attention with a signal lamp he was carrying. When Hood failed to "slow down" or "stop", the switchman signalled him again. The switchman then waited four or five seconds, and when he realized an accident was imminent signaled the engineer to stop as he jumped from the engine.

The engineer of the locomotive testified that he did not see the truck until immediately prior to striking it, but that he applied the engine's brakes in response to the "stop" signal which the switchman gave as he jumped from the train. After the brakes were applied, the engine traveled a distance of

12 to 15 feet before colliding with the truck two or three seconds later. Had the train's stopping distance been about three feet less, the collision would have been avoided. The normal stopping distance of the engine at the speed it was traveling was estimated at 20 feet.

As to the issue of the propriety of the instruction, it has long been the rule in Indiana that it is error to instruct a jury as to the law in an area unless evidence has been admitted rendering such legal theory applicable to the case. *Coffin* v. *United States* (1896), 16 S.Ct. 943, 162 U.S. 664, 40 L.Ed. 1109; *Indianapolis, etc. R.R. Co.* v. *Horst* (1876), 93 U.S. 291, 23 L.Ed. 898; *Cooper* v. *High* (1974), 262 Ind. 405, 317 N.E.2d 177; *B. & O. Railroad Co.* v. *Brown* (1972), 154 Ind. App. 660, 290 N.E.2d 742. In the case at bar, appellant asserts that there was no evidence before the trial court rendering the doctrine of last clear chance applicable to this cause.

The elements of the doctrine of last clear chance were summarized in the factually similar case of *Chesapeake & O. Ry. Co.* v. *Williams* (1943), 114 Ind. App. 160, at 170-171, 51 N.E.2d 384, at 388, wherein the court stated:

"[T]he doctrine of last clear chance applies to permit a recovery by the plaintiff where the danger threatening him was actually discovered by the defendant, and under the circumstances surrounding the particular case, the peril ought to have been realized by the defendant, in the exercise of ordinary care, in time to have averted the accident, notwithstanding the plaintiff was physically able to escape the danger until the instant before the impact and was guilty of continuous and concurrent negligence in that he remained oblivious of his own danger, which it was his duty to discover and realize."

Also *see, Nat'l City Lines, Inc.* v. *Hurst* (1969), 145 Ind. App. 278, 250 N.E.2d 507 (transfer denied).

In the instant case, there was evidence from which the jury could have concluded that Hood was negligent in pro-

ceeding onto the tracks without ensuring that he could safely cross. *See, New York, Chi., etc. R.R. Co.* v. *Henderson* (1957), 237 Ind. 456, 146 N.E.2d 531. And the evidence is undisputed that although Hood was oblivious of the approaching train, the switchman riding on the front of the engine was aware of Hood's approach for some time prior to the collision.

However, appellant relies upon the case of *Chesapeake & O. Ry. Co.* v. *Williams, supra,* for the proposition that a railroad employee may reasonably assume that a motorist who approaches a railroad crossing will stop, until such individual's conduct indicates otherwise. Thus, appellant reasons, because Hood was not known to be in peril until such time as his conduct demonstrated that he would fail to stop, and because Hood's peril was finally realized by the railroad's employee at a time when a collision could not have been avoided, the requirement of the doctrine of last clear chance that the peril be realized in time to avert the calamity is not present in this case.

However, the evidence most favorable to the appellee demonstrates that the railroad's switchman twice signaled to Hood; that Hood's view of the approaching engine was obstructed; and that he did nothing to indicate that he had observed either of such signals. The record further establishes that the switchman did nothing for four to five seconds after giving Hood the second signal and failed to signal the engineer to stop until he jumped from the engine just prior to the collision; that the normal stopping distance of the train at its speed that morning was twenty feet; and that although the train's brakes were applied only two to three seconds prior to the collision, it traveled only about three feet past the point of initial impact. The jury could have concluded from this evidence that the switchman should have known that Hood would fail to stop after signaling him the second time, and that had the switchman sig-

naled the engineer any earlier, the collision would have been avoided.

It must be concluded that there was evidence before the trial court rendering the theory of last clear chance applicable to this case, and that such evidence was sufficient to allow the jury to find that appellant had both the last clear chance to avoid the collision and negligently failed to do so.

The judgment of the trial court must be affirmed.

Affirmed.

Staton, P.J., and Garrard, J., concur.

NOTE.—Reported at 336 N.E.2d 417.