DONNA DAHLBERG, AS ADMINISTRATRIX OF THE ESTATE OF
LESLIE R. DAHLBERG, JR., DECEASED *v.* DR. ROBERT OGLE AND
DR. FRANCISCO D. DEOGRACIAS.

[No. 77TS524. Filed March 9, 1978.]

*Morris L. Klapper,* of Indianapolis, *Ricos, Wade & Price,* of Indianapolis, for appellant.

*Jon D. Krahulik, Richard J. Darko,* of Indianapolis, for appellee Ogle, *Geoffrey Segar,* of Indianapolis, for appellee Deogracias.

DeBRULER, J.—Appellant, Donna Dahlberg, as administratrix of the estate of her husband Leslie Dahlberg, Jr., instituted this suit, maintaining that her husband's death was the proximate result of the negligence of the two defendant medical doctors. At the end of the plaintiff's evidence a motion of the defendant Dr. Ogle for judgment on the evidence was granted. The case went to the jury against the remaining defendant Dr. Deogracias and a verdict for him was returned. Plaintiff appealed and this Court granted transfer with an opinion found at 266 Ind. 524, 364 N.E.2d 1174.

On the evening of January 13, 1971, Mr. Dahlberg complained to his wife that he was having stomach pains. The following day the pain continued and he became acutely ill with nausea, vomiting, diarrhea and occasional fever. On the morning of January 18 he took himself to the office of the defendant Dr. Ogle, a general practitioner who examined him and made a diagnosis of acute gastroenteritis and ordered medication accordingly. Twenty-four hours later on the morning of January 19 Dr. Ogle examined him again in the office and concluded that he had a ruptured organ in the abdomen and peritonitis. Dr. Ogle admitted him to the Johnson County Memorial Hospital that morning, and there by referral he was examined by the defendant Dr. Deogracia, a surgeon who

made a working diagnosis of peritonitis as secondary to a ruptured organ. Mr. Dahlberg remained in the hospital for eleven days during which time he was not operated on. On January 29 in response to pending renal failure he was transferred to Methodist Hospital in Indianapolis, Indiana, where under the care of different doctors, after having received further treatment including more than one surgical operation, he died on February 24, 1971. The immediate cause of death was renal failure and gram-negative sepsis occasioned by peritonitis, which in turn was probably the result of a breach of the intestine which permitted fecal matter to leak out. The site from which the peritonitis first developed was never determined.

## I.

Appellant first contends that the trial court erroneously granted the motion of the defendant Ogle for judgment on the evidence at the close of her case. The motion is governed by Ind. R.Tr. P. 50, and such motions are properly granted at the conclusion of the plaintiff's case where some or all of the essential issues being litigated are not supported by sufficient evidence.

Appellant's claim below against Ogle was presented on two separate theories. First, it was sought to be proved that Ogle was individually liable for his own negligent acts and omissions which occurred while he alone was treating the decedent prior to the admission of decedent to the Johnson County Memorial Hospital. In support of this theory it was alleged that Ogle failed to make a sufficient examination, that he failed to make an adequate diagnosis, and failed to procure necessary expert medical attention for his patient. Second, it was sought to be proved that Ogle was jointly liable with the surgeon Deogracias for negligently withholding necessary surgery and in providing inadequate conservative care in the form of drugs.

On first examination on the morning of January 18 Mr. Dahlberg was found to have a generalized soreness in his

abdomen and was hoarse. Defendant Ogle described the examination he made as follows:

> "I palpated his abdomen and I listened to it with a stethoscope, and he had bowel sounds, he did not have any point of tenderness, but he had a generalized tenderness in his abdomen."

Ogle testified that Mr. Dahlberg's abdomen was tympanitic and described what that term meant in Mr. Dahlberg's case:

> "In this man it meant that his abdomen was swollen and that by palpating it I could determine that it was air. It does not mean that the skin was tight or tense."

The doctor further testified that the presence of bowel sounds indicated that the intestinal tract was not paralyzed. The doctor did not take his temperature, pulse or perform any blood or urine tests. He was informed by his nurse that Mr. Dahlberg had been having a fever. Mr. Dahlberg had a history of a peptic ulcer. From his examination Ogle concluded that Mr. Dahlberg had acute gastroenteritis or inflammation of the stomach and intestines, and ordered medication accordingly.

The following morning Mr. Dahlberg was again examined in his office by Ogle after a night during which his discomfort intensified and on that occasion according to Ogle, he found Mr. Dahlberg's abdomen rigid and hard and did not hear any bowel sounds. He then concluded that his patient had a ruptured organ in his abdomen and probably had peritonitis and immediately arranged for his admission to the hospital and examination by a surgeon, Dr. Deogracias. X-rays and laboratory tests verified his last diagnosis, although the exact point in place and time at which the first breach of the intestine or of any organ occurred was never determined.

The relationship of doctor and patient existed here, and clearly Ogle owed a legal duty towards Mr. Dahlberg to use reasonable medical skill and care in treating him. There is, however, an absence of evidence from which the jury might have reasonably inferred a

breach of that duty while Ogle alone was treating Mr. Dahlberg. On the occasion of Mr. Dahlberg's first visit to Ogle's office, the doctor's decisions were based upon his evaluation of the symptoms manifested by Mr. Dahlberg at the time together with information supplied by Mr. Dahlberg and Mr. Dahlberg's past medical history.

The jury heard evidence from which it could have inferred that Ogle's evaluation on that first occasion was mistaken in that he failed to come to a realization of the actual seriousness of Mr. Dahlberg's condition. It also heard evidence that Ogle did not order tests such as blood, urine, or x-ray examination in making that evaluation. Those facts without more indicating a lack of skill or lack of care in making the examination and diagnosis would not warrant a verdict for the plaintiff. *Edwards* v. *Uland*, (1923) 193 Ind. 376, 140 N.E. 546; *Williams* v. *Chamberlain*, (Mo. 1958) 316 S.W.2d 505; *Ulma, as Administratrix, etc.* v. *Yonkers General Hospital et al.*, (1976) 53 A.D.2d 626, 384 N.Y.S.2d 201. The motion was properly granted as the liability of Dr. Ogle arising from his individual acts and omissions as physician.

Appellant further contends that the Trial Rule 50 motion should have been overruled as to Dr. Ogle because Ogle and Deogracias were "jointly diagnosing and treating Mr. Dahlberg while he was at the Johnson County Memorial Hospital" and there was evidence presented "that at least one of them, Dr. Deogracias, was negligent." This case finally went to the jury against Deogracias alone upon evidence that he wrongfully failed to operate and to provide sufficient dosages of antibiotics after having concluded that Mr. Dahlberg's condition had worsened to the point where he could not tolerate surgery.

The joint liability theory upon which appellant relies is dependent upon the existence of a joint and common legal duty. The general rule in Indiana today is that no such joint and common duty exists between a family physician and a surgeon whom he recommends. *Pow-*

*ers* v. *Scrutchfield,* (1965) 137 Ind. App. 211, 206 N.E.2d 326; *Huber* v. *Protestant Deaconess Hospital, etc.,* (1956) 127 Ind. App. 565, 133 N.E.2d 864. The basis of the rule is that it would be unjust to subject a family physician to liability for the wrongful acts of the surgeon, because the family physician has no dominion or control over the acts and decisions of the surgeon specialist. Appellant accepts the proposition, but contends that Ogle exercised an equal voice with Deogracias in making the medical decisions to withhold surgery and to provide antibiotics in the amounts ordered.

After the doctor-patient relationship was established between Mr. Dahlberg and Deogracias, Ogle continued to visit his patient daily in the hospital and make chart notes. He spoke with Deogracias about the case. Late one night he ordered a sleeping pill for Mr. Dahlberg by telephone. He personally made no other orders for medication. After about ten days in the hospital, Mr. Dahlberg's kidney function diminished to a serious degree. Upon observing this Ogle ordered a battery of lab tests in response and then arranged for the transfer of Mr. Dahlberg to Methodist Hospital in Indianapolis and into the care of surgeons there. At this point in time Deogracias announced to Ogle that he was prepared to operate. In spite of that Ogle's transfer plan was immediately carried out. Deogracias testified that he and Ogle worked "synchronously together." Ogle testified that they worked "in concert." The evidence and reasonable inferences therefrom warrant only the conclusion that Ogle maintained his professional relationship with his patient while he was in the hospital as general practitioner. By his personal presence he provided support for his patient and information and support for Deogracias. He did assume control of the patient after ten days of unsuccessful conservative treatment by drugs, however that fact would not warrant the inference that he made decisions with regard to surgical matters and antibiotic dosages during the preceding ten day period. The record therefore fails to demonstrate that Dr.

Ogle shared a legal duty which was breached by the alleged wrongful acts of the surgeon Deogracias. The ruling of the trial court was therefore not erroneous on this basis.

## II.

Appellant next contends that the trial court erred in permitting defense counsel to question two physician witnesses by hypothetical questions, the hypotheses of which did not include important facts from the evidence. In Indiana such hypotheses are not insufficient because they do not include all pertinent facts from the evidence. *Davidson* v. *State,* (1893) 135 Ind. 254, 34 N.E. 972. If the opponent deems such questions to be unfair, a remedy is afforded via cross-examination. Appellant relies upon the statement in *Viant* v. *Town of Lowell et al.,* (1947) 117 Ind. App. 354, 72 N.E.2d 239, that the hypothesis should embody substantially all facts relating to the subject matter of the question. That statement was made in the process of arriving at an assessment of the probative value of an opinion given in response to a hypothetical question and did not establish a legal test for determining the sufficiency of hypotheses. Appellant urges that we lay down a new rule following the law of Maryland which requires such hypotheses to embrace every material fact in evidence essential to the formulation of a rational opinion. *Andrews* v. *Andrews,* (1966) 242 Md. 143, 218 A.2d 194; *Mathieson Alkali Works* v. *Redden,* (1940) 177 Md. 560, 10 A.2d 699. That rule was rejected in *Davidson* v. *State, supra,* because it would lead to endless wrangles over the question as to what facts were established, and has been criticized by legal commentators on like grounds. C. Mc-CORMICK, EVIDENCE § 14 at 33-34 (2d ed. 1972) ; 2 J. WIGMORE, EVIDENCE § 682 at 805-10 and § 686 at 812-13 (3d ed. 1940). We therefore abjure the opportunity to adopt it.

## III.

Appellant next contends that the trial court erred in permitting a witness for the defense to give his opinion concerning the treatment given Mr. Dahlberg by the surgeon Deogracias because the witness was not a surgeon by training or experience. The witness was a licensed physician who had completed specialized training to become an internist and at the time of testifying was engaged in the practice of internal medicine and was on the teaching staff of Indiana University medical school. He was actively engaged in consulting with surgeons in Johnson County, Indiana as to whether or not surgery should be performed on medical patients. These facts regarding the witness' education, training and experience form an adequate basis for the exercise of judgment by the trial court finding the witness qualified to state his opinion regarding the decision of Deogracias to withhold surgery. *State* v. *Vaughan,* (1962) 243 Ind. 221, 184 N.E.2d 143; *Linton-Summit Coal Co.* v. *Hutchison,* (1953) 232 Ind. 369, 111 N.E.2d 819.

## IV.

Trial court gave an instruction which in part informed the jury that the defendant Deogracias did not warrant or guarantee the success of his treatment. Appellant does not challenge the correctness of the instruction as an abstract statement of the law, but contends that there was no evidence presented which rendered the statement applicable to this case. It is settled law that it is error to give an instruction which is not pertinent to the issues and applicable to the evidence. *Baker* v. *Mason,* (1968) 253 Ind. 348, 242 N.E.2d 513; *Elgin, Joliet & Eastern Railway Company* v. *Hood,* (1975) 166 Ind. App. 336, 336 N.E.2d 417. To date no Indiana case has applied this general rule to the specific instruction challenged here. The purpose of the instruction is to guide the jury away from reaching its verdict upon the mistaken conclusion that a physician warrants or

guarantees the success of his treatment. Given this purpose the instruction would be properly given if the jury heard evidence from which it might reasonably be expected to make the forbidden conclusion. There was evidence, direct and circumstantial, that the physicians involved in the case were "employed" by their patients, that some had partners, that others were employed by professional corporations, and that patients become obligated to pay for the services of a physician. From such evidence, the jury might have wrongly concluded that, as in the case of many skilled occupations, the physician warrants his work. The instruction was properly given here.

On the same legal ground appellant has challenged an instruction given by the trial court which referred to the existence of several methods of treating a given condition. Appellant argues that there were only two methods of treatment referred to in the evidence, namely, operative and non-operative, and therefore, the use of the word "several" in the instruction was therefore unsupported by the evidence. There was evidence presented that a number of drugs existed which would have been appropriately given in varying dosages in treating Mr. Dahlberg. Such evidence supported the use of the word "several" in the instruction.

## V.

The trial court gave the following instruction over objection:

"You are to determine whether or not the defendant was negligent in one of the ways charged by the plaintiff upon the conditions as they existed in January, 1971, as alleged by plaintiff. You are not to utilize *retrospection or hindsight*". (Emphasis added.)

Appellant contends that his instruction was improper, confusing and vague in that it through employment of the terms "retrospection" and "hindsight" charged the jury not to review past events which is the essence of the function of the jury. This instruction does not carry

the proscription complained of. When considered as a whole, it requires the jury to consider the alleged wrongful acts of the defendant in light of the conditions shown by the evidence to have actually existed at the time those acts took place. This instruction is not in a form which we would recommend. Nevertheless its import is sufficiently clear and we do not believe it would have confused or misled the jury.

## VI.

Appellant next complains of the refusal of the trial judge to give three of her tendered instructions. Our recent decision in *Davis* v. *State*, (1976) 265 Ind. 476, 355 N.E.2d 836, has clarified the rule governing the consideration of issues of this type on appeal. There we said:

"In considering whether any error results from refusal of a tendered instruction we must determine: (1) whether the tendered instruction correctly states the law, (citation omitted) ; (2) whether there is evidence in the record to support the giving of the instruction, (citation omitted) ; (3) whether the substance of the tendered instruction is covered by other instructions which are given (citation omitted)." 355 N.E.2d at 838.

Appellant tendered an instruction which detailed the specific acts of the defendant which the evidence tended to show as wrongful. The jury would not be properly instructed without such an instruction. There was evidence to support it. However, the same acts described in the instruction were specifically set forth in the Court's Instruction No. 2. It is not error to refuse an instruction if the substance of that instruction is covered by other instructions which are given.

Appellant tendered an instruction which would have informed the jury that the defendant could be held to respond in damages for the death of Mr. Dahlberg caused by his negligent acts even though defendant had no actual knowledge or appreciation that death might result

therefrom. This was a correct statement of the law. *Seaton v. U.S. Rubber Co.*, (1945) 223 Ind. 404, 61 N.E.2d 177. The purpose of this instruction was to prevent the jury from concluding that the defendant's lack of actual knowledge or belief that death would result was enough to exculpate him. There is no evidence in the record which supports this instruction. The evidence in the record of which we have been made aware in the course of considering this appeal establishes that the defendant Deogracias knew that Mr. Dahlberg's life was at stake while in the Johnson County Hospital. There is therefore little likelihood that the jury would render a verdict for the defendant based upon the conclusion which this instruction sought to foreclose.

Appellant tendered the following instruction:

"The term 'proximate cause' means that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred.

However, for there to be liability, the law does not require that the conduct of the defendant was the only cause of the injury."

The trial court refused the instruction but gave the first paragraph of it in one of the court's instructions. The final sentence of the instruction closely approximates a statement in *Surratt v. Petrol, Inc.*, (1974) 160 Ind. App. 419, 312 N.E.2d 487 at 495. Appellant argues that without the last sentence the jury might well have believed that the negligence of Dr. Deogracias must have been the sole cause of the death for there to have been liability. The first paragraph standing alone was not, in our opinion, subject to such a misapplication by the jury, and the purported clarification of it in the added sentence, suggesting as it does an exception to that which went before it, and restating that which went before it with a slightly different shade of meaning, rendered the entire instruction uncertain, indefinite and therefore incorrect.

The judgment is affirmed.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 373 N.E.2d 159.