**James E. ROMACK, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 4–482A89.

Court of Appeals of Indiana,
Fourth District.

March 31, 1983.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

Defendant-appellant James Romack (Romack) appeals his conviction of dealing in a Class II substance, dealing in marijuana, and possession of marijuana. We affirm.

The record reveals that on May 6, 1980, Sheriff Bill Upp arrested Larry Cilk for possession of marijuana. Cilk secured a "deal" for himself by arranging an illegal drug transaction with Romack. Sheriff Upp provided Cilk with the funds necessary to purchase a pound of marijuana from Romack, and the sale occurred on May 10th in Salamonia Rest Park. Sheriff Upp and his deputies were stationed around the park, and at trial they testified that the following events transpired.

After Romack and Cilk arrived separately at the park, Romack remained in his jeep. Cilk walked over to him, gave him some money, walked around the jeep and removed a package from it which was later discovered to contain marijuana. The deputies then arrested Romack and found a baggie of marijuana during a pat-down search. The police next searched Romack's jeep and seized a rifle, two hundred tablets of methaqualone, and additional quantities of marijuana. The police took Romack to the county jail, searched him again and found fifteen or sixteen tablets of methaqualone and a hemostat.

On appeal, Romack raises nine issues for review:

1. Whether the trial court erred in admitting into evidence items seized in an unreasonable search of Romack's automobile;

2. Whether the verdict against Romack for possession of methaqualone with intent to deliver is supported by sufficient evidence;

3. Whether the State failed to prove beyond a reasonable doubt that Romack delivered over Thirty (30) grams of marijuana;

4. Whether it was prejudicial error to admit State's Exhibit 2, a semi-automatic sporting rifle;

5. Whether Cilk was erroneously permitted to testify concerning evidence the court had previously suppressed;

6. Whether portions of Cilk's and Sheriff Upp's testimony was inadmissible hearsay;

7. Whether the court erred in refusing to give the defendant's tendered final instructions 1, 2, 3 and 4.

8. Whether the court abused its discretion in permitting the deputy prosecutor to ask jurors prejudicial and intimidating questions during voir dire; and

9. Whether the court erred in denying Romack's motion for mistrial after

one of the jurors was excused for bias.

## I.

Romack contends that the police searches and seizures of exhibits 1, 3, 4, 5, 6, 7 and 8 were in violation of his Fourth Amendment rights. Romack believes that the searches were unreasonable, as the police had sufficient opportunity to obtain a search warrant. He therefore concludes that the court erred in denying his motion to suppress and in overruling his objections to the fruits of the warrantless search.

▉▉▉ The Fourth Amendment preference for search warrants recognizes that the judgment to invade one's privacy is best made by a neutral judicial office. *Johnson v. U.S.,* (1948) 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. This is a preference, however, and not an absolute requisite to a search. Romack is, in effect, contending that the judicially created exceptions to the search warrant requirement are inoperative when probable cause exists before the search and the police have time to obtain a warrant. We disagree.

Exceptions to the search warrant requirement are based on and justified by the existence of circumstances that would render obtaining a warrant unfeasible. One of those circumstances *may* be the unforeseeability of the search, in which case foreseeability is an issue in determining whether an exception exists; it is not a condition which precludes the application of an otherwise appropriate exception. The fact that the searches in the present case were foreseeable does not automatically render the admission into evidence of items thereby seized improper.

▉▉▉ We believe that the searches of Romack and his jeep were valid searches incident to arrest. The courts have long recognized that police may conduct warrantless searches of an arrestee and the area within his immediate control. *Chimel v. Califor-*

nia, (1969) 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, *Lindley v. State,* (1981) Ind., 426 N.E.2d 398; *Akins v. State,* (1981) Ind., 429 N.E.2d 232; *Johnson v. State,* (1973) 157 Ind.App. 105, 299 N.E.2d 194; *Ramirez v. State,* (1972) 153 Ind.App. 142, 286 N.E.2d 219. The search and arrest must be contemporaneous not only as to place but also time. *Hadley v. State,* (1968) 251 Ind. 24, 238 N.E.2d 888. Romack does not claim, nor is there anything in the record which indicates a significant lapse of time between Romack's arrest and the searches of his person and jeep which would invalidate the seizures. Nor was the search without the scope of Romack's immediate control. *See, Enlow v. State,* (1955) 234 Ind. 156, 125 N.E.2d 250; *Pettit v. State,* (1934) 207 Ind. 478, 188 N.E. 784, authorizing the warrantless searches of automobiles incident to arrest.

▉▉▉ As a matter of course, police conduct warrantless searches incident to arrest, theoretically for their own protection and to prevent the destruction of evidence by an arrestee. As the foundation for a search incident to arrest is the arrest, it must be lawful for the subsequent search and seizure to be likewise constitutional. *Dowlut v. State,* (1968) 250 Ind. 86, 235 N.E.2d 173. Romack does not contest the validity of his arrest, but implies that as the arrest was foreseeable, so was the search incident, and the police should have obtained a search warrant. We know of no precedent supporting this argument, nor any logical reasons which would compel such an imposition when the arrest is valid. Our decision does not contradict the Supreme Court's holding in *Chambers v. Maroney,* (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. In that case, the Court discussed foreseeability problems peculiar to automobile searches, not searches of automobiles incident to arrest. As none of the exhibits admitted at trial were the fruits of unreasonable searches, we find no error.[1]

---

1. The warrantless search of Romack at the police station following his arrest was permissible, and the items seized during the course of that search were properly admitted into evi-

dence. *See Crane v. State,* (1973) 157 Ind.App. 319, 299 N.E.2d 877; *McGowan v. State,* (1973) 156 Ind.App. 344, 296 N.E.2d 667. Romack does not have standing to challenge the validity

## II.

Romack also argues that the evidence supporting his conviction under I.C. 35–48–4–2(2)[2] was insufficient in that it did not prove beyond a reasonable doubt his intent to deliver methaqualone. The relevant evidence of intent introduced by the State was the quantity of methaqualone in Romack's possession, his sale of marijuana to Cilk, and the fact that he carried a smaller quantity of methaqualone in his shirt pocket. There was no evidence in the record that Romack ever discussed a sale or offered to sell methaqualone to Cilk or any other person.

In deciding the issue of intent, we will not reweigh the evidence, but will only determine whether the relevant evidence was of sufficient probative value to warrant a determination of guilt. *Henry v. State*, (1978) 269 Ind. 1, 379 N.E.2d 132. Even though all of the evidence of intent is circumstantial, we need not find that it is adequate to overcome every reasonable hypothesis of innocence, but need only find that an inference of guilt may reasonably be drawn therefrom. *Browder v. State*, (1982) Ind.App., 431 N.E.2d 169; *Thomas v. State*, (1981) Ind.App., 423 N.E.2d 682; *Comer v. State*, (1981) Ind.App., 417 N.E.2d 1180.

First, Romack's sale of marijuana to Cilk is not direct evidence of intent to deliver methaqualone, but it does indicate that Romack was in the business of selling controlled substances. Second, Romack was carrying fifteen or sixteen tablets of methaqualone in addition to the two hundred tablets police found in his jeep. It is reasonable to infer that his purpose in separating the tablets into different portions was to retain the smaller amount for personal use and to sell the remaining larger quantity. The inference is especially strong as both quantities were within his immediate control. Third, there is the quantity itself.

Illegal possession of large quantities of narcotics does not create a presumption of intent to deliver, but may support an inference of intent. *See Thompson v. State*, (1980) Ind.App., 400 N.E.2d 1151; *Stayton v. State*, (1980) Ind.App., 400 N.E.2d 784; *Gray v. State*, (1967) 249 Ind. 629, 231 N.E.2d 793. The probative value of quantity in proving intent obviously increases as the quantity itself becomes greater, but there is some confusion as to how the State may prove that a particular quantity exceeds an amount which would be possessed for personal consumption.

At Romack's trial, the State failed to introduce expert testimony as to quantity and personal use. We believe that the importance of quantity was attenuated due to the absence of such testimony. In some circumstances, that omission would prove fatal, especially where there is evidence that the defendant is a drug user and where the amount of narcotics in possession is less than the quantity in the present case.

Despite the lack of expert testimony, we believe that it is reasonable to infer Romack's intent to deliver by considering the circumstantial evidence as a whole. There was sufficient evidence to support Romack's conviction for possession of methaqualone with intent to deliver.

---

of the seizure of the marijuana he sold to Cilk. Once Romack completed the sale, he lost all possessory interest and expectation of privacy in that particular parcel of marijuana. *See Lee v. State*, (1981) Ind.App., 419 N.E.2d 825; *Cox v. State*, (1979) Ind.App., 392 N.E.2d 496.

2. Ind.Code 35–48–4–2 provides:
A person who:
(1) knowingly or intentionally manufactures or delivers a controlled substance, pure or adulterated, classified in schedule I, II, or III, except marijuana, hash oil, or hashish; or

(2) possesses, with intent to manufacture or deliver, a controlled substance, pure or adulterated, classified in schedule I, II, or III, except marijuana, hash oil, or hashish;
commits dealing in a schedule I, II, or III controlled substance, a Class B felony. However, the offense is a Class A felony if the person delivered the substance to a person under eighteen (18) years of age at least three (3) years his junior.

## III.

Romack challenges the jury's finding that he sold over 30 grams of marijuana to Cilk, as the determination of quantity elevated the offense from a Class A misdemeanor to a Class D felony. Romack's challenge is based on the police chemist's failure to remove non-narcotic substances before determining weight. He argues that in the absence of a quantitative analysis, the jury could only speculate as to the weight of the pure narcotic substance. In order to evaluate the validity of this claim, we must first define aggregate weight for the purpose of applying the enhancement penalty.

The jury found Romack violated the following statute:

(a) A person who:

(1) knowingly or intentionally manufactures or delivers marijuana, hash oil, or hashish, pure or adulterated; or

(2) possesses, with intent to manufacture or deliver, marijuana, hash oil, or hashish, pure or adulterated;

commits dealing in marijuana, hash oil, or hashish, a Class A misdemeanor.

(b) However, the offense specified in subsection (a) is:

(1) a Class D felony if:

(A) the recipient or intended recipient is under eighteen (18) years of age;

(B) the amount involved is more than thirty (30) grams but less than ten (10) pounds of marijuana or two (2) grams but less than three hundred (300) grams of hash oil or hashish; or

(C) the person has a prior conviction of an offense involving marijuana, hash oil, or hashish; and

(2) a class C felony if the amount involved is ten (10) pounds or more of marijuana or three hundred (300) or more grams of hash oil or hashish.

Ind.Code 35–48–4–10.

The State relies on a previous case interpreting this statute. In *Grogg v. State,* (1981) Ind.App., 417 N.E.2d 1175, the First District defined "more than 30 grams" as including non-narcotic substances present with narcotic substances. The court further stated that the definition of "marijuana" as used in subsection (b)(1)(B) contemplates compounds and mixtures and therefore a quantitative analysis is unnecessary in assessing weight. *Id.* at 1178. In interpreting the statute, the court relied on a Fourth District case in which we discussed a salient difference between the dealing and possession statutes of the Controlled Substances Act:

We do not believe that the terms "aggregate weight" in the statute penalizing possession were meant to include non-controlled substances. Rather, the language permits all the controlled substance found in an accused's possession to be weighed together for purposes of applying the penalty, regardless of whether it was found together or found in smaller, separate amounts. Again, viewing the Controlled Substances Act as a whole confirms this interpretation. There is a clear pattern of specificity throughout the sections penalizing unlawful dealing. Unlike the unlawful possession sections, each expressly defines unlawful dealing in a controlled substance as involving the substance in question in its pure or adulterated form. *See, e.g.* I.C.1971, 35–24.1–4.1–1 (Burns Code Ed.) ("a person is guilty of unlawful dealing in a controlled narcotic substance if he: (1) knowingly manufactures or delivers a controlled substance, pure or adulterated, classified in Schedule I or II which is a narcotic drug . . . ."). Thus it is clear that if the Legislature had intended to include the non-controlled substances used as mixers with heroine in determining aggregate weight, it would have expressly done so. Since it did not, we must conclude that such a construction of the statute was not intended.

*Hutcherson v. State,* (1978) Ind.App., 381 N.E.2d 877, 881 (footnote omitted).

In *Hutcherson,* we refused to hold that the enhancement penalty for possession of

heroin applied when the requisite weight could not be met absent non-narcotic portions. Our decision was based on the legislature's omission of the modifiers "pure or adulterated" in the possession statutes and their inclusion in the dealing statutes. This contrast is consistent and evident in the definitions of offenses, but not in the possession and dealing penalty enhancement subsections. In accordance with basic rules of statutory interpretation, we will not assume that the legislature's use of modifiers in subsection (a) was intended also to apply to subsection (b).

It is an elementary rule of statutory construction, that when a definite provision is made with reference to one particular subdivision of a section of the law dealing with the identical subject matter as the other subdivisions thereof and a similar reference is omitted from the other subdivisions thereof as well as from all of the rest of the section, the particular reference is intended to apply solely to the subdivision in which it is contained and to exclude its application from all of the rest. *Cannon v. Towner,* 188 Misc. 955, 70 N.Y.S.2d 303, 312 (Supreme Court, Special term, 1947). See also: *Kirkpatrick v. Stelling,* 36 Cal.App.2d 658, 98 P.2d 566, 574 (1940), appeal dismissed, 311 U.S. 607, 61 S.Ct. 29, 85 L.Ed. 384, (1940), reh. den., 311 U.S. 726, 61 S.Ct. 130, 85 L.Ed. 473 (1940); *State ex rel. White v. Grant Superior Court* (1930), 202 Ind. 197, 209–210, 172 N.E. 897, 901, 71 A.L.R. 1354.

*Highland Sales Corp. v. Vance,* (1962) 244 Ind. 20, 186 N.E.2d 682.

As the legislature did not modify "marijuana" in subsection (b)(1)(B), we will look to the statutory definition of that word to interpret the penalty enhancement. In Ind. Code 35–48–1–1 the legislature explicitly excluded non-narcotic portions of the plant in defining marijuana:

"Marijuana" means any part of the plant genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant, including hashish and hash oil; any compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. *It does not include the mature stalks of the plant; fiber produced from the stalks; oil or cake made from the seeds of the plant; any other compound manufacture, salt, derivative, mixture, or preparation of the mature stalks* (except the resin extracted therefrom); *or the sterilized seed of the plant which is incapable of germination.*

(Emphasis added.)

We disagree with the First District's conclusion that the above definition contemplates non-narcotic compounds and mixtures. It is well-established that where statutory language is clear and unambiguous, courts may not substitute language they feel the legislature intended. *See Whitacre v. State,* (1980) Ind., 412 N.E.2d 1202; *Ott v. Johnson,* (1974) 262 Ind. 548, 319 N.E.2d 622; *Smiley v. State Department of Revenue,* (1981) Ind.App., 416 N.E.2d 855. The only compounds and mixtures contemplated by the statutory definition are narcotic ones; to ignore statutory rules of construction and conclude otherwise would allow the courts to apply the penalty enhancement unconstitutionally. A person delivering a mixture composed of five grams of marijuana and twenty-six grams of oregano could be convicted of a Class D felony, while delivery of twenty-nine grams of a pure narcotic substance would be a Class A misdemeanor. The possible constitutional implications of such a result are obvious and provide an additional reason for our agreement with Romack on the issue of interpretation.

The only remaining question is whether the State failed to prove beyond a reasonable doubt that Romack delivered more than thirty grams of marijuana. We do not believe the lack of quantitative analysis was a fatal flaw in this case.

The police chemist testified the package Romack sold to Cilk was 427 grams in total

weight. To analyze the material, she took "thief samples," small portions of the bulk and found that the samples were marijuana. She further testified that in her opinion at least thirty grams of the 427 grams was leafy and stem material.

To apply correctly the penalty enhancement, a quantitative analysis may be necessary where the bulk weight is less than in the present case. We know of no cases, however, which state a quantitative analysis must always be conducted to establish purity. *Jones v. State,* (1982) Ind.App., 435 N.E.2d 616, 620–621; *Scott v. State,* (1980) Ind.App., 404 N.E.2d 1190, 1194; *Stayton v. State,* (1980) *supra* at 788.

Romack challenges the significance of the chemist's testimony on two grounds: first, because she stated that in her opinion at least thirty grams of the bulk was leafy and stem material, as opposed to "more than" thirty grams as provided in the statute; second, because not all stem material is narcotic, her opinion is insufficient evidence that he delivered a sufficient quantity of narcotic substance. Admittedly, these are flaws in the case against Romack which would have barred the application of the penalty enhancement had the bulk weight been less. Here, however, as Romack delivered a package weighing 427 grams and as the deficiencies in the chemist's testimony were slight, the jury could easily conclude that more than 30 grams of the bulk was narcotic.

As the penalty enhancement was properly applied, we will not remand for resentencing.

### IV.

 Romack believes that the trial court erred in admitting into evidence exhibit 2, a semi-automatic rifle that was seized during the police search of his jeep. His claim of error is predicated on the grounds of irrelevancy, immateriality and undue prejudice. We agree the rifle was improperly admitted.

We cannot agree with the State that the rifle is relevant in establishing Romack's intent to possess and sell drugs. We also disagree that Romack had the rifle to protect his "stash" and that possession is relevant in proving possession with intent to deliver. If these reasons were sufficient to show relevancy, trial courts could uniformly admit any legally possessed weapon regardless of the crime. Romack testified he hunts as a hobby and he owned the rifle legally. Possession of a weapon is not an element of the offense, and there is no evidence that it was used in the commission of a crime.

Romack has failed, however, to show prejudice from this error. As we found there was sufficient evidence to uphold his conviction for possession of methaqualone with intent to deliver, the trial court's error was not so egregious in effect to warrant reversal.

### V.

 Prior to trial, the court granted Romack's motion in limine to suppress the contents of his wallet. During the direct examination of State's witness Cilk, he testified that Sheriff Upp supplied him with $500 to consummate the deal with Romack. As a portion of that sum later became part of the contents of the wallet, Romack alleges Cilk's testimony violated the court's order in limine. Because of the alleged error in admitting the testimony, Romack believes that a mistrial is the only adequate remedy. He claims that he could not effectively cross-examine Cilk without waiving his objection, and hence was placed in a position of grave peril.

The court's order in limine is as follows:

The State of Indiana appears by Joel Roberts, Deputy Prosecuting Attorney of Jay County and the Defendant appears in person and by Counsel, John Brumfield.

The Court holds hearing on Defendants' motion in limine.

IT IS ORDERED that the motion be sustained as to provision 1 to the extent

that it applies to any testimony regarding conversations that would bear upon any prior offenses or drug activity of the Defendant unless the State shall approach the bench outside the presence of the jury and seek further hearing whith (sic) regard to such matter.

IT IS FURTHER ORDERED that said motion be sustained with regard to those items mentioned in the motion that have been suppressed by prior order of the Court *including any reference to the contents of the Defendant's wallet in this cause.*

IT IS FURTHER ORDERED that otherwise said motion be and is hereby overruled.

(Emphasis added.)

Cilk's testimony concerned events which transpired prior to the search of Romack's wallet and prior to Romack's acquisition of a portion of the $500. During the course of the trial, no reference was made as to Romack's wallet or its contents. Romack's counsel admitted the motion did not extend to the money before it was in Romack's possession and gave no other arguments as to the inadmissibility of the testimony. We believe the trial court appropriately overruled Romack's objection and his motion for mistrial.

## VI.

During the trial, State's witnesses Cilk and Sheriff Upp testified as to conversations they had with one another prior to Romack's arrest. The trial court overruled Romack's objections to the testimony, and on appeal he continues to challenge its admissibility on the grounds that it is irrelevant, immaterial and hearsay.

■ The trial court has wide discretion in ruling on the relevance of evidence in a criminal proceeding. *White v. State,* (1981) Ind., 425 N.E.2d 95, 97; *Turpin v. State,* (1980) Ind., 400 N.E.2d 1119, 1122. Given the fact the testimony of Cilk and Sheriff Upp provided the jury with a background to subsequent events involving Ro-

mack, we cannot state that the trial court abused that discretion by overruling Romack's objection.

We also cannot state the testimony was inadmissible hearsay. Out of court statements are regarded with suspicion because of difficulty in assessing their credibility. The Indiana Supreme Court has held that suspicion is not a bar to admissibility when the declarant is available for cross-examination. *Scott v. State,* (1981) Ind., 425 N.E.2d 637, 639; *Patterson v. State,* (1975) 263 Ind. 55, 58, 324 N.E.2d 482, 485. There is nothing in the record which indicates the testimony was without the exception as defined by *Patterson* and its progeny. Cilk and Sheriff Upp were not only available for cross-examination, but were both questioned extensively by Romack's counsel. The court did not err in admitting the testimony as substantive evidence. *Limp v. State,* (1982) Ind., 431 N.E.2d 784, 787.

## VII.

■ Romack next contends that the trial court erred in refusing his tendered instructions 1, 2, 3, and 4. In considering whether any error has resulted from the refusal, we must determine whether the tendered instructions correctly stated the law, whether the record contains evidence to support the instructions, and whether the substance of the instructions was covered by other instructions given. *Richey v. State,* (1981) Ind., 426 N.E.2d 389, 395; *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836, 838.

■ Romack's requested and refused instructions are as follows:

### No. 1

The Court instructs you that in deliberating upon the evidence in this case (sic) the purpose of arriving at your verdict; you should start with the presumption that the defendant is innocent of the crime charged in the information. IT

SHOULD be your endeavor to reconcile all the evidence that has been introduced in this case with the presumption of innocence, and if, that that (sic) can be done, then I instruct you that under the law, it would be your duty to find the defendant not guilty.

### No. 2

In order to find the defendant guilty in this cause you must find beyond a reasonable doubt that there was affirmative conduct either in the form of acts or words from which reasonable inferences to effect the commission of a crime might be drawn. Mere acquiescence is not enough to constitute a person's guilt as to knowingly or intentionally committing an offense.

### No. 3

If two (2) conclusions can reasonably be drawn from the evidence, one of innocence, and one of guilt, the jury should adopt the one of innocence.

### No. 4

Where the evidence tends only to support a conclusion of guilt, it is insufficient; it must do so beyond a reasonable doubt.

The court's final instruction 7[3] specifically states the defendant is presumed innocent and that the jury should weigh and reconcile the evidence in light of that presumption. Instruction 7 is almost a verbatim recitation of Romack's instruction 1. The only variance between the instruction the court read and the one it refused is the manner in which each states its conclusion. Romack's instruction 1 specifically states

the conditions under which a jury must find the defendant not guilty while final instruction 7 states the same conclusion in terms of when the presumption of innocence terminates.

Romack's tendered instructions 3 and 4 are also adequately covered by the court's final instruction 7. Instruction 3 informs jurors to adopt a conclusion of innocence if one of guilt can also reasonably be drawn from the evidence. It is intuitively obvious that final instruction 7 would command the same result as it states the presumption of innocence remains with the defendant unless the evidence goes beyond being equally convincing as to guilt or innocence. Romack's tendered instruction 4 merely restates the reasonable doubt standard.

As the substance of tendered instructions 1, 3 and 4 was adequately covered by the court's final instruction 7, the court did not err in refusing them. *See Grassmyer v. State,* (1981) Ind., 429 N.E.2d 248; *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70, 74.

 Romack contests the court's refusal of tendered instruction 2 on the grounds that it was a correct statement of law taken directly from language in the case of *Pace v. State,* (1967) 248 Ind. 146, 224 N.E.2d 312. The propriety of an instruction must be more than a correct statement of law; evidence which renders such a legal theory applicable must have been admitted at trial. *Elgin, J.E. Ry. Co. v. Hood,* (1976) 166 Ind.App. 336, 336 N.E.2d 417. Tendered instruction 2 was appropriate in *Pace* as one of the charges against the defendant was aiding and abetting. Instruction 2 would be misleading and confusing to a jury deliberating on the issue of

---

**3.** The pertinent part of instruction 7 on the presumption of innocence and reasonable doubt standard is as follows:

The defendant is by law presumed to be innocent of the crimes charged, unless his guilt shall have been established by the evidence beyond a reasonable doubt. This presumption of innocence remains with him throughout the trial and he is entitled to its benefits unless the evidence goes beyond being equally convincing as to guilt or innocence or somewhat more convincing as to guilt, and is sufficient to convince you beyond a reasonable doubt of his guilt. You should weigh the evidence in the light of this presumption, and if you can reasonably and fairly reconcile all the evidence given with the presumption of the defendant's innocence, it is your duty to do so.

intent to deliver a controlled substance. Final instruction 6 adequately and correctly informed the jury as to the scienter element of the crime charged.

## VIII.

Romack believes the prosecutor's questioning of prospective jurors during voir dire created a climate of prejudice which precluded trial by an impartial jury. Specifically, Romack alleges the prosecutor improperly asked prospective jurors what they thought about drug laws as opposed to asking whether they would follow the law. The question for review is whether the trial court abused its discretion by allowing the question and overruling Romack's objections to it.

The trial court has broad discretionary power in regulating the form and substance of voir dire examination. *Hopkins v. State,* (1981) Ind., 429 N.E.2d 631, 634. There are limits on that discretion; the Indiana Supreme Court has condemned the use of voir dire as a vehicle for trying cases. *Roberts v. State,* (1978) 268 Ind. 127, 373 N.E.2d 1103. We do not believe, however, that the trial court exceeded the bounds of its discretion by allowing the prosecutor to inquire about the attitudes of prospective jurors on drug laws.

The purpose of voir dire examination is to determine whether a prospective juror is able to deliberate fairly on the issue of guilt and to permit discovery of grounds for peremptory challenges and challenge for cause. *Hart v. State,* (1976) 265 Ind. 145, 352 N.E.2d 712 and *Lamb v. State,* (1976) 264 Ind. 563, 348 N.E.2d 1. One permissible manner by which an attorney may discover grounds for challenges is by sounding jurors' attitudes toward a particular crime. In *Phelps v. State,* (1977) 266 Ind. 66, 360 N.E.2d 191, the court held that the trial court did not abuse its discretion by allowing the prosecutor to ask prospective jurors whether they were suspicious of rape charges being fabricated and whether they believed a rape victim should resist to the point of death.

As in the *Phelps* case, the prosecutor in the present case was attempting to ascertain whether particular jurors held preconceived notions about drug laws. There is nothing inherently prejudicial about the question itself; the question could elicit a response favorable or unfavorable to a defendant.

Given the innocuous nature of the question and the lack of any evidence indicating that the prosecutor was attempting to inflame the jury against Romack, the trial court did not err in permitting the prosecutor's inquiry.

## IX.

Before the jury was impanelled, the court held a hearing outside the presence of the jurors. During the hearing, the court discovered that one of the jurors knew of Romack, had heard he did drugs, and had herself tried drugs. With the approval of both parties, the court excused her and substituted the alternate juror. Romack then requested a mistrial on the grounds that he was denied due process and the right to pick a fair and impartial jury. The question for review is whether the trial court abused its discretion by refusing to grant a mistrial.

As we have often stated, "[t]he declaration of a mistrial is an extreme action and is warranted only when no other action can be expected to remedy the situation." *Gambill v. State,* (1982) Ind., 436 N.E.2d 301, 304. Romack cites *Stevens v. State,* (1976) 265 Ind. 396, 354 N.E.2d 727, *rehearing* 265 Ind. 410, 357 N.E.2d 245, in arguing that a mistrial is the only appropriate remedy for the situation. In *Stevens,* the Indiana Supreme Court outlined procedure for the trial court to follow when there is potential prejudice of a juror. The court concluded by stating that the trial court should excuse the juror and declare a mistrial if bias is found to be present. *Stevens v. State, supra,* 354 N.E.2d at 732.

In the present case, the timing of events significantly distinguishes *Stevens.*

The bias of the juror was discovered before the trial commenced and the alternate juror was substituted before the jury was sworn. Given the sequence of events, we fail to see how Romack was injured or faced the possibility of injury as a result of the trial court's remedy. There is no indication that other jurors were influenced by the excused juror, or the court's action. Romack participated in the voir dire of the alternate juror who replaced the excused juror, and there was no need at any point in the trial for an additional alternate.

As we do not believe that the trial court's remedy impinged upon Romack's due process rights or his right to challenge jurors, the trial court did not abuse its discretion in refusing to grant a mistrial.

The trial court's judgment is affirmed.

CONOVER and MILLER, JJ., concur.